[Civ. No. 6396.   Fourth Dist.   Jan. 25, 1961.]

DOYLE E. SNOW et al., Respondents, v. THE CITY OF GARDEN GROVE et al., Appellants.

Willard R. Pool, City Attorney, and H. Clay Reavis, Jr., Deputy City Attorney, for Appellants.

Gilbert & Tarr for Respondents.

GRIFFIN, P. J.—Petitioners-respondents, copartners doing business as Snow House Movers, brought this action for declaratory relief and for writ of mandate against respondents-appellants city of Garden Grove, a municipal corporation, its building director, its city council and its city planning commission (hereinafter referred to as respondents) to declare city zoning ordinance number 59 unconstitutional and to compel respondents to issue to petitioners a conditional use permit in accordance with their application for the use of their property for a storage yard for houses in connection with their house-moving business in the city of Garden Grove.

After hearing, the trial court declared the ordinance unconstitutional and ordered the conditional use permit to be issued. Respondents appeal.

Ordinance number 59 is a general ordinance establishing zones in the city of Garden Grove and regulating the use of land, height of buildings, area of lots and yard spaces. Certain amendments thereto have been adopted. Petitioners' property is located in M-1 zone and is classified as permitting certain defined industries therein, such as automobile assembly, dismantling and used parts storage when operated or maintained wholly within a building; automobile painting, with all painting, sanding and baking conducted wholly within a building; auction houses and stores; bakeries; body and fender works, including painting; bottling plants; breweries; draying, freighting or trucking yards or terminals; lumber yards; etc. It then provides:

"Any industrial use not specifically permitted herein must be reviewed as provided in Article 17 for a Conditional Use Permit in order to locate industry in its proper and available location in the region and prevent conflict with the high degree of residential development existing in and around the City of Garden Grove. . . . Any use that is found to be ob-

jectionable or incompatible with the character of the City and its environs due to noise, dust, odors or other undesirable characteristics may be prohibited.''

Certain limitations on permitted uses are provided, and one section provides that no land shall be used ''for any purpose other than is specifically permitted in the zone in which such building or land is located'' and, in the case of ambiguity or uncertainty, provision is made for a determination or interpretation of the use and, if approved by the planning commission and city council, that interpretation shall govern.

On January 15, 1959, petitioners purchased a piece of property about 90 feet by 495 feet in the city of Garden Grove on Westminster Avenue near Newhope Street in what was classified as M-1 zone to conduct a house-moving business. They were in the process of building an office, a place for equipment storage and an office parking place nearby. They were aware of the fact that these intended improvements were permissible in that zone. However, knowing that the M-1 zone did not permit the storage of houses that were sold to them and to be parked on vacant property included in their purchase and which houses were to be held there until sold by them and moved to other locations, they did, on February 6, 1959, apply to the planning commission for a conditional use permit for this purpose. A sketch map accompanied the application, showing the proposed locations, the nearness to Westminster Avenue, a well-traveled street, and other adjoining properties in that area. At the hearing before the commission certain evidence was produced. It was shown that within the M-1 zone there were three private residences, a septic tank service, building supply house, open air storage, pottery and ceramic retail sales with open storage, a 10-acre farm, plastering contractor, tractor supply with open storage, and across the street were located a trailer sales with open storage, a 5-acre turkey ranch, one house and several unpainted buildings, a 5-acre open field, a real estate office, a plumbing contractor supplier with outside storage, and behind petitioners' property was a 9½-acre field.

Objections to the granting of the permit were made by several of these property owners, indicating that the vicinity of Westminster Avenue and Harbor Boulevard was a very congested area; that moving these houses on and off this particular property posed a traffic hazard and added to the congestion and would detract from the further development

and decrease the value of the remaining property if uses of this character were allowed to consume the remaining area, and that those rightfully permitted to use M-1 district for their established businesses would be greatly hampered. One party owning 10 acres 180 feet from petitioners' property felt it would be detrimental to her property, very unglamorous and not good for other properties in that vicinity. The plumbing contractor across the street felt it would decrease the value of his property to have houses stored nearby and would cause considerable traffic congestion because there was only one entrance to the property and it was also used by his fleet of trucks. Public contractors owning property nearby complained that they had invested over $100,000 in land and buildings and had improved their grounds with beautiful buildings and landscaping, and the granting of this provision would degrade all other surrounding property; that they have over 100 trucks running in and out of their properties (some emergencies) and there is only one egress to the tract. The owner of the turkey ranch complained that the storage of these houses would definitely lower the value of her property, but she would not be disturbed if petitioners maintained remaining portions of their business at that location. Other complaints were that the granting of this use would pave the way and encourage other nonconforming users to come into this limited M-1 zone, such as auto-wrecking yards, etc.; that storage of vacant houses would be an invitation to tramps, degenerates and other undesirables to use the houses, and it would be dangerous for children, and the houses would become infested with rats and insects and their increment.

Petitioners produced testimony that with freeways going through this city, their house-moving business was a legitimate and necessary enterprise and it was not always possible to sell houses before moving them and therefore it was sometimes necessary to store them nearby until they could be sold and moved to other property; that this was an inoffensive business; that it involved only five or six houses per year and was lacking in noise, odor and dust, and that there are "unglamorous" businesses that must exist; that although zoning is recognized, there must be some zone provided in the city for such an industry and the city has no authority to bar petitioners from storing houses on their property since they have no provision for such use in any other part of the city. (Citing such authority as *Bernstein* v. *Smutz*, 83 Cal.App.2d 108 [188 P.2d 48]; *Village of University Heights* v. *Cleveland*

*Jewish Orphans Home,* 20 F.2d 743 [54 A.L.R. 1008]; *Redwood City Co. of Jehovah's Witnesses* v. *City of Menlo Park,* 167 Cal.App.2d 686 [335 P.2d 195]; *Neary* v. *Town of Los Altos Hills,* 172 Cal.App.2d 721 [343 P.2d 155]; *Endara* v. *City of Culver City,* 140 Cal.App.2d 33 [294 P.2d 1003]; 35 Cal.Jur.2d, § 247, p. 70.) The planning commission denied the request. It was stipulated that the same testimony was heard and considered by the city council on appeal and the application was again denied. This testimony was again considered by the trial court and, after viewing the premises, it made its first order, as reflected in the minutes:

". . . plaintiff's business is a lawful and legal business and is entitled to a place to operate in the city limits of Garden Grove. Any action to eliminate such business on the part of the City Council is unconstitutional . . ."

Subsequently this order was set aside and the court then found that the denial of the application for a conditional use permit, under the ordinance, was to deny petitioners the right to engage in this business on the property mentioned and that petitioners have a constitutional right to engage in this business in Garden Grove; that the business is lawful and legitimate; that the action of the respondents was an abuse of discretion; that such business would not create any unusual noise, smoke, dust, odor or vibrations and is not a nuisance *per se* or in fact; that said use is compatible with other existing uses in the M-1 zone involved; that said ordinance, as applied to petitioners, is unreasonable, confiscatory and oppressive; that there were no adequate standards in said ordinance to govern or guide the respondents in their deliberations and accordingly the ordinance, as applied to petitioners, is unconstitutional and void. Judgment was entered accordingly and the respondents were directed to issue the permit to engage in the business as contemplated upon the application as proposed.

It is respondents' contention on this appeal that the city council denied the application because (1) the subject use is not compatible with other uses permitted in the industrial zones, nor with those uses located within the area; (2) that such use is not a permitted use in the M-1 zone; and (3) that by virtue of the fact that the principal characteristic of the city of Garden Grove is that of a residential community, it would be inconsistent with the principles of sound planning practices to attempt to provide space within the corporate limits of the city for each and every use when in effect certain

kinds of uses must be treated and located on an area or regional basis wherein they will not be detrimental to surrounding properties.

██ It has been held that in addition to a city being able to zone comprehensively the land within its boundaries, it may prohibit certain types of businesses within its boundaries. (*Beverly Oil Co.* v. *City of Los Angeles,* 40 Cal.2d 552 [254 P.2d 865] ; *Wood* v. *City Planning Commission,* 130 Cal.App. 2d 356 [279 P.2d 95] ; *City of Los Angeles* v. *Gage,* 127 Cal. App.2d 442 [274 P.2d 34].) The action in the Wood case was to compel the establishment of such district in the city of Buenaventura under its zoning ordinance. It was there said, on page 363:

"That the purpose underlying section 8150 and its subdivisions [of the ordinance] is to repose in the planning commission and city council a discretion to determine *first,* whether or not an oil drilling district shall be established in a given area at all and, *second,* if so, what conditions and restrictions shall be imposed under the peculiar circumstances of each case to insure the maximum protection of the several conflicting private interests and the minimum detriment to the community and to the public health, safety, comfort, and general welfare."

██ It is therefore well established that a city of the size and limited area of the city of Garden Grove is not obligated to make provision for the location and operation within its city limits of any and all known industries regardless of other considerations, provided its actions are not arbitrary, unreasonable or not done fraudulently and are done to insure maximum protection of the several conflicting private interests and minimum detriment to the community and to safeguard public health, safety, comfort and general welfare.

The M-1 zone here involved was, by ordinance, so classified as to exclude the storing of houses on property in that zone and this fact was recognized by petitioners in their application. After hearing all the protests and arguments in favor of granting the conditional use permit, the commission, upon competent evidence, found that the permit should not be issued. Several of the commissioners gave their individual reasons why the permit should not be issued, among them was that to issue such a permit would be a detriment to the remaining property in the M-1 zone described and that the property should be reserved for subsequent authorized M-1 zone purposes. There is no particular finding that the permit was denied because of any obnoxious odors, dust or noise, or that such conditional

use would be injurious to health or safety. However, there was evidence that the conditional use would be injurious to the safety and welfare of the remaining property owners if the permit were granted. A similar conclusion was reached by the city council. ▮ The court is not authorized to judge the intrinsic value of evidence considered by an administrative agency, nor to weigh it, if the record discloses substantial evidentiary support for the decision. ▮ It is also the rule that administrative boards and officers are vested with a high degree of discretion in working out the problems confronting them, and an abuse of that discretion must be clear and manifest before the courts will interfere. ▮▮ In *Wood* v. *City Planning Commission, supra,* 130 Cal.App.2d 356, 363, it is said:

"This brings us to a consideration of the scope of judicial review of the acts of local administrative agencies. The weight of authority supports the pronouncement that in reviewing the acts of local administrative boards, the courts are limited to determining whether there has been an abuse of discretion, and the court is without power to try the issues de novo or to compel such boards to act in a particular manner. ▮ The writ of mandate cannot be used for the purpose of determining whether or not, in the opinion of the reviewing tribunal, the evidence was sufficient to support the decision complained of, provided the inferior tribunal or board had jurisdiction and the record discloses substantial evidence to support the decision."

▮ The question, then, presented to the superior court, and now before us, is whether there was evidence of sufficient substantiality before the planning commission and city council to justify the finding that the granting of the conditional use permit as proposed by applicant would be detrimental to the planned development of the city of Garden Grove and contrary to good zoning practices; that in addition the operation of such industry as contemplated in the area proposed will be detrimental to the community and to the public health, safety, comfort and general welfare of the residents of this city, and whether the commission and city council were guilty of fraud or malicious or arbitrary use of their powers, and whether its determination was accordingly unreasonable. We conclude that from a review of the record herein it must be held that the action of the municipal authorities was justified by substantial evidence, and that there is no showing of fraud, malice or arbitrary action either in the hearings afforded all

concerned or in the decision reached. The trial court was therefore without power to substitute its judgment for that of the commission and city council. It is true that the trial judge viewed the premises, but he made no statement as to what he observed. Photographs of the surrounding territory were received in evidence. The evidence as to conditions present was before the planning commission in the first instance and a staff report in evidence was duly considered. Thereafter, the evidence was before the city council, the members of which were likewise familiar with the premises. This evidence was before the trial court and stands practically uncontradicted. We do not see how the viewing of the premises by the trial judge, which petitioner claims constituted evidence under such authority as *Sindell* v. *Smutz*, 100 Cal.App.2d 10 [222 P.2d 903], would be adverse to the facts presented and constitute evidence sufficient to support a finding and conclusion contrary to that reached by the commission and city council.

The wisdom of a zoning ordinance is not a matter for the courts unless there is apparent a manifestly unreasonable classification. In *Otis* v. *City of Los Angeles*, 52 Cal. App.2d 605, 613 [126 P.2d 954], the court stated:

''But the granting or refusal of such variance rests largely in the discretion of the administrative body charged with enforcement of the ordinance. . . . a refusal to grant such a variance will not be disturbed by the courts in the absence of a clear and convincing showing of an abuse of the discretion vested in such board.'' See also *Flagstad* v. *City of San Mateo*, 156 Cal.App.2d 138 [318 P.2d 825]. The burden rests upon him who asserts invalidity of the zoning ordinance to show such an abuse of discretion on the part of the zoning authorities as would justify the court in concluding as a matter of law that the ordinance is unduly oppressive and not reasonably necessary to promote the general welfare of the people of the community. Every intendment favors a valid exercise of the police power with respect to the enactment of a zoning ordinance and every zoning plan must be viewed as a whole, and the court will not search out individual cases of discrimination or hardship. (*Minney* v. *City of Azusa*, 164 Cal. App.2d 12 [330 P.2d 255].) In *Garden Grove Congregation* v. *City of Garden Grove*, 176 Cal.App.2d 136, 143 [1 Cal.Rptr. 65], this court held that the validity of an ordinance establishing the requirements for granting a zoning variance is not involved in a mandamus proceeding to compel the issuance of a conditional use permit in accordance with petitioner's applica-

tion, since petitioner, having applied for relief under the terms of the ordinance, is not in a position to question its constitutionality. In *LaFranchi* v. *City of Santa Rosa*, 8 Cal.2d 331 [65 P.2d 1301, 110 A.L.R. 639], cited in 11 California Jurisprudence 2d 402, the validity of an ordinance was attacked in a proceeding for declaratory relief. The complaint in the instant action seeks declaratory relief and a writ of mandate. The judgment entered takes on the form of a writ of mandate and compels the issuance of the permit under the ordinance which petitioners attack. Since we have determined that the ordinance is constitutional in respect to petitioners' application for a permit, it becomes unnecessary to determine this claim.

We conclude, from the authorities cited, that the trial court was without power to substitute its conclusion and judgment for that of the commission and city council and to declare the ordinance unconstitutional for the reasons indicated. (35 Cal. Jur.2d, § 250, p. 74.) The denial of the conditional use permit in this case did not prohibit the proposed business within the city of Garden Grove but only denied the use of the land in question for the storage of houses.

Judgment reversed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied February 17, 1961, and respondents' petition for a hearing by the Supreme Court was denied March 22, 1961.