[No. B118524. Second Dist., Div. Two. Oct. 20, 1998.]

MALIBU MOUNTAINS RECREATION, INC., et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

360

**COUNSEL**

Gerald M. Sato for Plaintiffs and Appellants.

De Witt W. Clinton, County Counsel, and Peter J. Gutierrez, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**NOTT, J.**—The regional planning commission (Commission) of respondent Los Angeles County (County) revoked the conditional use permit of a tennis ranch in the Santa Monica Mountains. In a subsequent hearing, the board of supervisors reached the same result. The owner of the property, appellant Malibu Mountains Racquet Club, then filed a petition for administrative mandamus and a complaint for damages for deprivation of civil rights and inverse condemnation.[1] The matter was bifurcated, with the mandamus action being heard first. The trial court denied the petition for mandamus and subsequently granted summary judgment for the County on the complaint.

The primary issue presented on appeal is whether the trial court reviewed the evidence under the proper standard. MMR contends that the trial court should have used the independent judgment test instead of the substantial evidence test. We agree, but hold that there is no reason to remand for consideration under the proper standard. We therefore affirm the trial court.

### FACTS

1. *General Background*

The property is approximately 7.27 acres. On August 22, 1973, the County granted a conditional use permit (CUP), No. 192-(5). The CUP stated that its purpose was for the property "to be used to continue to operate and maintain an existing tennis ranch and to make additions thereto, subject to the attached conditions, numbered 1 through 11." Over time, those additions included a modular office structure, four buildings, twenty-one paved parking spaces, a swimming pool and five tennis courts.

MMR purchased the property in 1978.

On December 8, 1986, the department of regional planning (DRP) sent a letter stating that the CUP had lapsed due to its nonuse by MMR for over two years.

---

[1]Malibu Mountains Racquet Club is the owner and lessor of the subject property. Malibu Mountains Recreation, Inc., is the lessee and is a party to this appeal. For convenience, we will refer to appellants jointly as "MMR."

At some point in 1990, MMR applied for a new CUP. However, on March 28, 1991, Rudy Lackner (the administrator of the land use regulation branch of DRP) sent MMR a letter stating that he was repealing the December 8, 1986, letter. Thereafter, MMR abandoned its application.

By 1991, the County had received numerous complaints from residents in the area concerning MMR's use of the property. After a series of public hearings, the Commission revoked the CUP. That decision was subsequently affirmed by the board of supervisors and the trial court.[2]

### 2. *The Commission's Findings*

The Commission conducted a public hearing on March 11, 1992. Eight people testified in favor of revocation of the CUP, citing instances of activities on the property that were not related to tennis and claiming that such activities constituted a nuisance to neighbors. Representatives of MMR spoke against revocation.

On March 16, 1992, the Commission visited the property. Representatives of MMR were present.

On April 29, 1992, an additional public hearing was held, attended by MMR. At the conclusion of the hearing, the Commission voted unanimously to revoke the CUP. Its findings included:

No. 16—The original owner discontinued the tennis operation prior to MMR's ownership. After the December 8, 1986, notice to MMR of the lapse of the CUP for nonuse, MMR used the property primarily for business interests and promotions, in particular for overflow parking from the neighboring Calamigos Ranch. The tennis courts were in disrepair and were only used incidentally.

No. 17—Neighbors complained of disturbances from the use of the property for non-tennis activities.

No. 18—MMR has indicated that it wishes to organize a private tennis club on the property but has submitted no plans or applications.

---

[2]According to the trial court, Los Angeles County Code section 22.56.1780 authorizes the revocation of a CUP where the use for which the permit was granted has ceased or has been suspended for one year or more, or where the use of the permit violates the conditions under which the CUP was granted, or where the use of the CUP has become a nuisance or detrimental to the public health or safety.

No. 20—The general plan and zoning would permit a wide range of allowable uses of the property. Therefore, the revocation of the existing CUP would not deny MMR a reasonable use thereof.

The Commission concluded that the use for which the CUP was granted had ceased for two or more years, and the owner was using the property for purposes contrary to the conditions of the CUP. As a result, the Commission revoked the CUP without prejudice to the submission of an application by the owner for a new CUP.

### 3. *The Board of Supervisors' Findings*

The board of supervisors heard the matter de novo. It made 63 findings, the most pertinent of which were:

No. 1—The revocation is made because the land use contemplated by the CUP has ceased, the permit conditions are being violated, and the current land use constitutes a nuisance.

Nos. 2 through 4—The revocation is not made because of any change in ownership, or because some of the current users ride motorcycles, or to eliminate any future commercial recreational use of the property.

No. 7—The purpose of the CUP was to permit the operation of a small tennis instructional facility.

No. 8—A CUP must be used only for the authorized purpose.

Nos. 9 through 13—County control over the use of environmentally sensitive areas serves a valid public purpose. It is not unfair to require an owner to obtain a CUP for the commercial use of such property, nor for the County to make periodic investigations to review such use.

No. 15.—The tennis courts were the principal recreational feature of the approved facility.

No. 17—Substantial evidence shows that after acquisition of the property in 1978, MMR abandoned tennis instruction and the tennis facilities.

Nos. 18 through 22—For the last several years, MMR has used the property to promote its magazine publication interests, which have nothing to do with tennis. The tennis courts are in disrepair, and their use is incidental at best. The property (including the tennis courts) is on occasion used as overflow parking for events held at the adjoining campground.

Nos. 21 and 22—The use of the property for parking or to support the adjacent campground is not a valid use of the CUP.

Nos. 23 through 29—MMR has created a disturbance for neighbors by holding events that attract large numbers of people, including, on occasion, hundreds of motorcyclists. MMR has also erected, without County authority, a highway billboard advertising new recreational activities on the property. Additionally, there was evidence that MMR was selling alcoholic beverages without a license.

Nos. 30 and 31—MMR has not established a recreational business on the property nor used the property in reliance on the CUP.

Nos. 33 through 41—MMR was notified on December 8, 1986, that the CUP lapsed for nonuse. The DRP's letter of March 28, 1991 reversing the letter of December 8, 1986, was inappropriate and was not based on adequate evidence. The evidence is that since its acquisition of the property in 1978, MMR has never used the property for the purpose of the CUP. The property stood abandoned from at least 1986 to 1990. No tennis instruction or play has taken place for at least two years as of the present hearing.

Nos. 42 through 44—MMR made application for a new CUP in 1990. That application contained a proposal for a restaurant, live entertainment, conference rooms, expansion of guest facilities and the conversion of the existing tennis courts into parking areas.

Nos. 45 and 46—MMR's advertisements show that tennis instruction is not being offered at the property.

No. 52—There is no substantial evidence that the owner has invested any substantial sums of money on the site in reliance on the CUP.

Nos. 53 through 63—Some of the existing uses by MMR may come within the zoned uses of the property, and MMR may apply for a new CUP.

The board of supervisors concluded that the property has not been used for the purpose of the CUP for more than a year, that the current use is a public nuisance and violates the conditions under which the CUP was granted, and that the CUP is revoked without prejudice to MMR seeking a new one.

4. *The Trial Court's Statement of Decision*

In an eight-page statement of decision, the trial court included facts that are additional to those set forth above. For example, the trial court stated that

in August of 1974, the tennis ranch had over 50 members. In 1978, after MMR purchased the property, the property was never operated as a tennis ranch. The trial court concluded that renting the tennis courts to others or incidental employee use did not constitute the operation of a tennis ranch.

For two reasons, the trial court denied MMR's argument that the March 28, 1991, letter estopped the County from relying on abandonment between 1978 and 1986. First, Rudy Lackner (the author of the letter) had no credible facts on which to repeal the December 8, 1986, letter. Second, in the years between the two letters (1986 to 1991), MMR did not outlay any money that was related to tennis activities, and thus there was no detrimental reliance.

The trial court strongly disagreed with MMR's contention that the current uses were contemplated within the CUP. The court concluded that "the general recreational uses engaged in by petitioner [MMR] at the time of the revocation in 1992 were not contemplated in the 1973 CUP. Any reasonable reading of the 1973 CUP makes it clear that it is for a limited use as a tennis ranch and recreational uses connected and in support thereof. Moreover, the uses engaged in by petitioner after purchase of the property in 1978 were plainly not within the uses set out in the 1973 CUP." Having found that there was substantial evidence to support the revocation of the CUP due to nonuse, the trial court found it unnecessary to determine whether the current use of the property was a public nuisance.

## DISCUSSION

### 1. *Standard of Review*

#### a. *By the Trial Court*

Under Code of Civil Procedure section 1094.5, the decision of an administrative agency may be challenged by a petition for a writ of administrative mandamus. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 137 [93 Cal.Rptr. 234, 481 P.2d 242].) That section provides for either of two standards of judicial review. One standard is substantial evidence. The other is independent judgment.[3] The California Supreme Court has held that it was the intent of the Legislature to invest the judiciary with the task of making the ultimate

---

[3]Code of Civil Procedure section 1094.5 provides, in pertinent part, "(c) Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

decision as to which cases should be subject to which test. (4 Cal.3d at pp. 137-140.)

The Supreme Court stated that if an administrative decision substantially affects a fundamental vested right, the trial court must exercise the independent judgment test. (4 Cal.3d at pp. 143.) Otherwise, the substantial evidence test should be applied. (*Id.*, at p. 144.) The decision as to which test to use must be made on a case-by-case basis. (*Ibid.*)[4]

In determining whether a right is "fundamental" and "vested," the question is whether the affected right is deemed to be of such significance that it should not be extinguished by a body lacking in judicial power. (4 Cal.3d at p. 144; *Goat Hill Tavern* v. *City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1526 [8 Cal.Rptr.2d 385].) We will now examine the application of that standard to a CUP.

A CUP may be granted by a governmental entity if such use is desirable for the public convenience and is not detrimental to the public welfare. (*Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal.App.2d 619, 626 [339 P.2d 914].) A CUP is conditional by definition, and the violation of conditions attached to its grant may lead to revocation. (8 Cal. Real Estate Law & Practice (1998) Nonconforming Uses, § 262.05[3], p. 262-19.)

The initial denial of a CUP or other license is reviewed by the substantial evidence standard, since until a permit or license is received, no right has vested. (*Saad* v. *City of Berkeley* (1994) 24 Cal.App.4th 1206, 1213 [30 Cal.Rptr.2d 95]; *Desmond* v. *County of Costa Contra* (1993) 21 Cal.App.4th 330, 334 [25 Cal.Rptr.2d 842].)

The rule is otherwise, however, where a permit or license has been granted and the successful applicant has thereafter acted upon the grant to his or her detriment. In such instance, the applicant has acquired a vested right. (*AVCO Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546].

A CUP creates a property right which may not be revoked without constitutional rights of due process. (*Kerley Industries, Inc.* v. *Pima County* (9th Cir. 1986) 785 F.2d 1444, 1446.) Additionally, a CUP creates a right

---

[4] The Supreme Court noted that the formula it created was imprecise and might lead to unpredictable results. In a dissent, Justice Burke argued against the use of the independent judgment test. Instead, he urged the uniform application of the substantial evidence rule only, regardless of the "right" that was involved.

which runs with the land, not to the individual permittee. (*Anza Parking Corp.* v. *City of Burlingame* (1987) 195 Cal.App.3d 855, 858 [241 Cal.Rptr. 175].)

. While there are several cases dealing with the denial of an application for a CUP,[5] there are evidently no reported California decisions that deal with revocation. The closest case is *Goat Hill Tavern* v. *City of Costa Mesa, supra,* 6 Cal.App.4th 1519. In that case, the tavern had been in ˙existence since 1955. The owner was granted a CUP to add a beer garden. A new owner purchased the tavern in 1984 and expended $1.75 million in refurbishment, including the addition of a game room. After the fact, he obtained a CUP for that addition. However, the CUP was only for six months, subject to an application for renewal. After issuing several short-term renewals, the city finally denied renewal of the CUP, stating that the owner had now lost all right to operate his business. The trial court reviewed the matter on the independent judgment test and granted the writ. The appellate court affirmed the use of the independent judgment test, finding that under the facts presented, the denial of the CUP was akin to the revocation of an existing CUP rather than an application for a new one. (*Id.,* at pp. 1530-1531.) *Goat Hill* therefore supports MMR's contention that in the case before us, the trial court should have used the independent judgment test.

### b. *Appellate Review*

Regardless of the standard of review that was required of the trial court, our review on appeal is guided by the substantial evidence test. (*Goat Hill Tavern* v. *City of Costa Mesa, supra,* 6 ˙Cal.App.4th at p. 1531.)

### 2. *Application to the Present Case*

Under the authorities discussed above, it seems clear that the grant of a CUP with subsequent reliance by the permittee creates a fundamental vested right that subjects a revocation to judicial review under the independent judgment test.

In the present case, there is no question that the CUP was granted. The question is whether the permittee acted in reliance on it. The trial court thought not, as it went to great lengths to distinguish the facts here from those of *Goat Hill*. The trial court stated: "Petitioner cites expenditures of

[5]E.g., *Smith* v. *County of Los Angeles* (1989) 211 Cal.App.3d 188 [259 Cal.Rptr. 231]; *Anza Parking Corp.* v. *City of Burlingame, supra,* 195 Cal.App.3d 855; *Snow* v. *City of Garden Grove* (1961) 188 Cal.App.2d 496 [10 Cal.Rptr. 480]. This is not presented as an exhaustive list.

$486,000 in reliance on the CUP. The record does not support that conclusion. Although money was spent to improve the property after 1990, there is no evidence that the expenditures were in support of a tennis ranch." After citing the salient facts of *Goat Hill*—to wit, a 35-year business with the recent expenditure of over $1.7 million and the potential loss of the entire business, the court then said: "Nothing close to the facts in *Goat Hill Tavern* exists in this case. The original use encompassed in the 1973 CUP essentially disappeared for a number of years in the 1980s. Then, when petitioner moved his publishing business operations from the property and sought to use the property for a general recreational private club, the use contemplated was far beyond that created in the 1973 CUP. Accordingly, no legitimate claim can be asserted that this petitioner had a fundamental vested right in the 1973 CUP. Therefore, the substantial evidence test must be applied to this writ proceeding."

The County urges that the trial court's reasoning was correct, and notes that in *Goat Hill*, the owner faced the prospect of losing its established business, while in the present case, MMR was not using the property for the purposes of the CUP, and in any event, is not foreclosed from seeking a new CUP.

 It is true that the courts are reluctant to hold that purely economic considerations equate to the loss of a fundamental vested right. (*Champion Motorcycles, Inc.* v. *New Motor Vehicle Bd.* (1988) 200 Cal.App.3d 819, 824 [246 Cal.Rptr. 325]; *British Motor Car Distributors, Ltd.* v. *New Motor Vehicle Bd.* (1987) 194 Cal.App.3d 81, 90 [239 Cal.Rptr. 280]; *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 22-23 [112 Cal.Rptr. 872].) However, the amount of monetary damage is only one factor in the analysis. We are required also to consider "the effect of [the loss] in human terms and the importance of it to the individual in the life situation." (*Bixby* v. *Pierno*, *supra*, 4 Cal.3d 130, 144; *Goat Hill Tavern* v. *City of Costa Mesa*, *supra*, 6 Cal.App.4th at p. 1526.) In other words, we are to look at the nature of the right rather than the actual amount of harm. (*San Benito Foods* v. *Veneman* (1996) 50 Cal.App.4th 1889, 1896 [58 Cal.Rptr.2d 571].)

 As we have stated, the granting of a CUP with subsequent reliance by the permittee creates a fundamental vested right. Here, the trial court's basic error was in looking solely at MMR's actions to see if MMR acted in reliance on the CUP. In other words, the trial court treated the CUP as personal to MMR. However, a CUP is not a personal right of the permittee. Instead, it is a property right that runs with the land, not with the owner. (*Anza Parking Corp.* v. *City of Burlingame*, *supra*, 195 Cal.App.3d at p. 858.)

It is clear from the record that the prior owner of the property acted in reliance on the CUP for at least some period of time, as the property was indeed used for a tennis ranch after the CUP was granted and support facilities were built. The CUP was in force at the time MMR bought the property. MMR was not required to obtain a new CUP. Thus, MMR acceded to the same rights as held by the previous owner. Phrased another way, it is obvious that had the property never been sold and had the County revoked the CUP, judicial review would have been governed by the independent judgment test. Since the CUP runs with the land, MMR obtained the same status as the prior owner.

Accordingly, a fundamental vested right was in force at the time MMR purchased the property, and judicial review of the revocation of that right should have been made under the independent judgment test.[6]

Having concluded that the trial court erred in its standard of review, we now turn to the question of whether we need remand the matter for a new hearing.

3. *Remand*

MMR contends the trial court's use of the incorrect standard of review requires a per se reversal and a new hearing. Ordinarily, we would agree. Reversal would be mandated when the record showed that the trial court did not examine and weigh the losing party's evidence or exercise its independent judgment as to the credibility of witnesses and the overall weight of the evidence. (*Webster* v. *Trustees of Cal. State University* (1993) 19 Cal.App.4th 1456, 1462-1463 [24 Cal.Rptr.2d 150]; *Barber* v. *Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658-659 [53 Cal.Rptr.2d 4]; *San Benito Foods* v. *Veneman* (1996) 50 Cal.App.4th 1889, 1897 [58 Cal.Rptr.2d 571].)

MMR claims that it did not obtain the benefit of the trial court's independent judgment of such matters, in that the trial court ignored evidence in the administrative record that MMR's uses were indeed within the uses contemplated by the CUP. Specifically, MMR points to the March 29,1991, letter from Rudy Lackner and the attached inspection reports that would support a finding that MMR's uses of the property were within the scope of the CUP. We disagree.

---

[6]Additionally, we note that there was at least some evidence that MMR acted in reliance on the CUP. First, MMR claimed to have expended over $400,000 on the property. Second, as evidenced by the March 28, 1991, letter, at least some members of the Commission staff and attorneys for county counsel were of the opinion that MMR was acting within the terms of the CUP. The fact that the trial court may have been justified in rejecting that evidence does not alter the fact that it should have done so under the proper evidentiary test.

Contrary to appellant's assertions, the key portions of the trial court's statement of decision show that the court did indeed consider *all* evidence in making the threshold findings that supported the ultimate decision. First, the trial court made the determination that "[I]t is clear from the entire record that the use contemplated in the 1973 CUP was a tennis ranch, and facilities attendant to that use." That overarching preliminary finding is in the nature of a conclusion of law, and MMR presents us with no tenable argument that the trial court failed to consider or weigh any contrary evidence in reaching that conclusion. Indeed, a plain reading of the CUP verifies the correctness of the trial court's determination, and MMR points to no extrinsic evidence that would negate it. Once that conclusion is established, the rest becomes easy.

If the primary purpose of the CUP was a tennis ranch, the next question is what evidence was before the court that MMR ever used it as such? The answer is none. No evidence was offered to show that MMR ever used the property to operate a tennis ranch. Instead, in a classic case of using the tail to wag the dog, MMR made the implausible argument that an occasional use of tennis courts (dilapidated or not) by employees or guests justified the use of the property for activities that were in no way related to tennis.

The trial court focused on the heart of the dispute. "Petitioner's argument that this facility is permitted for a more general recreational use is the heart of this dispute. . . . [¶] Petitioner does not raise a serious argument that the property is being used as a tennis ranch. Petitioner believes that the general recreational uses that have been engaged in and were engaged in at the time of the determination to revoke the CUP are contemplated within the 1973 CUP language. [¶] The court finds that the general recreational uses engaged in by petitioner at the time of the revocation in 1992 were not contemplated in the 1973 CUP. Any reasonable reading of the 1973 CUP makes it clear that it is for a limited use as a tennis ranch and recreational uses connected and in support thereof. Moreover, the uses engaged in by petitioner after purchase of the property in 1978 were plainly not within the uses set out in the 1973 CUP."

Next, the trial court stated: "Although petitioner did not have the burden to prove the property was being used in accordance with the CUP, or that the conditional use was being exercised, *the record contains no evidence* that a tennis ranch was being operated on the property between 1978 and 1986. Renting tennis courts to others, or employee use of the tennis courts, does not amount to the operation of a tennis ranch." (Italics added.) The trial court also said, "The evidence in the record clearly supports the conclusion that,

following the purchase of the property in 1978, petitioner's use of the property in accordance with the CUP had been abandoned."

Finally, the trial court noted: "Petitioner cites expenditures of $486,000 in reliance on the CUP. The record does not support that conclusion. Although money was spent to improve the property after 1990, there is no evidence that the expenditures were in support of a tennis ranch."

In sum, after a review of all evidence, the trial court made the critical findings that the CUP was granted for use as a tennis ranch; MMR presented no evidence that it *ever* used the property as a tennis ranch; the current uses of the property had nothing to do with having a tennis ranch as the centerpiece of activity; and the expenditure of funds on the property by MMR had nothing to do with a tennis ranch.

■ A judgment will only be reversed if the error at the trial court level resulted in a miscarriage of justice to the extent that a different result would have been probable without the error. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; Evid. Code, §§ 353, 354; *Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163].)

■ Our examination of the record does not show that a miscarriage of justice occurred here or that remand would result in a more favorable result to MMR. Unlike the appellate courts in *Webster, Barber* and *San Benito*, we have the advantage of detailed and express findings of fact and conclusions of law by the trial court that are not founded simply on a "substantial evidence" standard. The court's analysis of the entire record on the basic issues that determine the outcome of this case leads to the unequivocal conclusion that no different result would ensue if this matter were to be remanded for review under the independent judgment test.

Our conclusion is founded on a commonsense reading of the trial court's statement of decision, which shows that the results reached would not be altered in a new hearing. First, the finding that the purpose of the CUP was to use the property to operate a tennis ranch is unassailable. Second, MMR has made no claim or offered any proof that it ever used the property with the primary goal of operating a tennis ranch. Instead, it has offered only the paper-thin argument that all of the outside activities were within the CUP. The fact that such activities may or may not have been allowable under the CUP or under the general zoning plan does not take away from the unrebutted fact that MMR has never operated the property as a tennis ranch.

We hold that despite the trial court's use of the incorrect standard of review, MMR was accorded due process in a fair hearing at which all of its

arguments and evidence were considered and that there is no probability of a different result on remand.

DISPOSITION

The order denying the writ of mandate is affirmed, as is the judgment on the complaint. The parties are ordered to bear their respective costs on appeal.

Fukuto, Acting P. J., and Zebrowski, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 13, 1999.