[No. B179349. Second Dist., Div. Eight. May 17, 2005.]

AUTOPSY/POST SERVICES, INC., Plaintiff and Appellant, v. CITY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Gaines & Stacey, Fred Gaines, Lisa A. Weinberg, Kimberly A. Rible and Alicia B. Bartley for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Jeri L. Burge, Assistant City Attorney, Michael L. Klekner and Steven N. Blau, Deputy City Attorneys, for Defendant and Respondent.

OPINION

**BOLAND, J.—**

## SUMMARY

Autopsy/Post Services, Inc. (APS) purchased a commercially zoned building on Foothill Boulevard for the purpose of operating a private medical laboratory specializing in autopsy and tissue procurement. Six months after granting APS's contractor a permit to convert the premises to a medical laboratory, the City of Los Angeles issued a stop work order, and eventually revoked the permit, on the ground that APS had not obtained the required clearance from the City Planning Department (Planning Department) for compliance with the Foothill Boulevard Corridor Specific Plan. APS then sought an exception to the Specific Plan. The Planning Department, and later the North Valley Area Planning Commission, refused to approve APS's application, finding that the proposed autopsy facility was equivalent to use as a morgue or mortuary, a use which is restricted to industrial zones. The City Council denied APS's appeal, and the Board of Building and Safety Commissioners rejected APS's claim it had a vested right to proceed with the autopsy facility.

■ APS sought a writ of mandate ordering the City to set aside its decisions, reinstate the building permit, and grant a final certificate of occupancy. The trial court denied APS's petition, finding: (1) APS had no vested right to the building permit because it did not act in good faith, having failed to disclose during the permit application process its intention to perform autopsies at the site; and (2) the City's decision to revoke the permit was supported by substantial evidence. We conclude the trial court correctly determined no vested right existed, and properly applied the substantial evidence test to its review of the City's decision to revoke the permit. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 1999, APS purchased a commercially zoned building on Foothill Boulevard. APS's founder and president, Vidal Herrera, planned to operate his expanding commercial autopsy and tissue procurement business on the first floor of the two-story building. Herrera asserts that, before APS purchased the building, he met with a Department of Building and Safety (Building and Safety) supervisor and told him he wanted to use the building to perform autopsies, and was given "the okay." APS then purchased the building. Beginning in October 1999, APS's contractor obtained from Building and Safety various building permits required to convert the structure into

a medical laboratory, which is a use allowed by right in the property's "C2-1VL" commercial zone. However, none of the building permit applications contained APS's name or indicated the nature of its business. Herrera also obtained, under the company name "Otreum 'Le Labatory," mechanical testing and approval of an autopsy table.

On March 2, 2000, Herrera applied for a permit for an exterior sign showing the name of his business, "1-800-AUTOPSY." The City informed Herrera that any exterior remodeling, including new signs, required approval by the Planning Department because the building was located within the Foothill Boulevard Corridor Specific Plan (Specific Plan). The Specific Plan was created in 1995 to ensure that land uses and development in the Foothill Boulevard corridor occur in a manner compatible with or complementing the surrounding community, and included objectives such as creating a vibrant commercial environment along Foothill Boulevard by encouraging appropriate building design and landscaping and creating a more unified appearance in buildings and signs. The Specific Plan requires that, upon a change of use in lots fronting on Foothill Boulevard (as APS's does), at least 70 percent of the ground floor frontage must contain specified uses, such as retail sales, restaurants, museums and related uses.

On April 18, 2000, Building and Safety issued a "stop work" order and notice of intent to revoke Herrera's building permit. The notice stated that the permit lacked the required clearance from the Planning Department for the purposes of the Specific Plan, and directed Herrera to stop work and obtain the required clearance for the change of use to a "medical laboratory." The notice further advised Herrera to contact the Planning Department for directions to obtain the required clearance. According to Herrera, the Planning Department directed him to submit a Specific Plan exception request to allow the proposed medical laboratory use and to reduce the requirement to devote 70 percent of ground floor frontage to retail sales or related community-serving uses.

Herrera applied for an exception to the Specific Plan. At the recommendation of the Planning Department, the request was denied by the North Valley Area Planning Commission on January 4, 2001, following a public hearing. The Commission refused to approve the change of use, finding that the proposed autopsy facility was equivalent to use as a morgue or mortuary, which is restricted to industrial zones. The Commission also found that strict application of Specific Plan regulations, including the 70 percent ground floor frontage requirement, did not deny APS the ability to utilize the property, because the uses could include retail sales or office uses related to APS's mail order business. Moreover, practical difficulties were "more likely to be associated with [APS's] intended use as opposed to permitted commercial

uses." The Commission found, for example, that access to the property was limited to a single front entrance, necessitating delivery of cadavers across the public sidewalk in sight of pedestrians and other businesses; the only available parking was located on the street; and parking and delivery activities could ultimately combine with high-speed traffic to create a safety hazard.

After the Planning Commission's decision to deny APS's request for an exception to the Specific Plan, Building and Safety revoked Herrera's permit.[1] APS appealed the Planning Commission's decision to the City Council, which denied the appeal on May 23, 2001. On June 23, 2001, APS appealed from Building and Safety's permit revocation to the Board of Building and Safety Commissioners. APS asserted it had a vested right to proceed with the autopsy facility, because it had acted in good faith and had spent in excess of $225,000 on land and construction based on the City's advice. The Board, however, found no error in Building and Safety's revocation of the permit. The Board agreed with Building and Safety's determination that APS had not accrued a vested right, including its finding that "the autopsy use in the establishment was never made explicitly or implicitly clear."

Before the Board of Building and Safety Commissioners issued its ruling, APS filed a verified petition for writ of mandate and complaint. The petition sought a determination that APS had a vested right to complete the project. The petition also sought an order requiring the City to (1) set aside its decisions denying APS's exception request and its application for a vested rights determination, and (2) reinstate the building permits and provide a final certificate of occupancy. APS's petition and complaint further asserted causes of action for equitable estoppel and declaratory relief.

The trial court denied APS's petition. It ruled APS had no vested right to the permit it obtained, because it did not act in good faith in applying for the permit or relying on the issuance of the permit, having "artfully concealed" its intention to perform autopsies from the Building and Safety staff.[2] The court further concluded that substantial evidence supported Building and Safety's decision to revoke the permit. A final judgment was entered on October 7, 2004, and this appeal followed.

---

[1] Building and Safety is authorized to revoke a permit if it was granted in error or in violation of other provisions of the Municipal Code. (Los Angeles Mun. Code, § 98.0601.)

[2] The trial court observed APS concealed the true nature of its business by not disclosing its name in the permit application and by describing its business in the application as a "medical laboratory." At the hearing, the court observed that "a medical laboratory, in common understanding, does examine and test bodily tissue and bodily fluids, but it's delivered to them in a little bottle, you know, not inside a corpse."

## DISCUSSION

APS contends that the trial court applied the wrong standard of review in refusing to order the City to reinstate APS's building permit and to issue a certificate of occupancy, and that its judgment must be reversed because APS had a vested right to complete construction and operate its business. Specifically, APS complains that the court did not apply its independent judgment to determine whether the City's revocation of APS's permits was supported by the weight of the evidence, and instead applied the more lenient substantial evidence test in reviewing the administrative record. The weight of the evidence, APS claims, "is distinctly in [APS's] favor," and "shows that the City knew the full nature of [APS's] proposed use when it issued the building permits."

■ APS is correct on one point. If the City's grant of APS's permit and if APS's reliance on it created a fundamental vested right, the subsequent permit revocation would be subjected to judicial review under the independent judgment test. (*Malibu Mountains Recreation, Inc. v. County of Los Angeles* (1998) 67 Cal.App.4th 359, 368 [79 Cal.Rptr.2d 25] (*Malibu Mountains*) ["it seems clear that the grant of a [conditional use permit] with subsequent reliance by the permittee creates a fundamental vested right that subjects a revocation to judicial review under the independent judgment test"].) However, the City's grant of the permit and APS's reliance on it did not create a fundamental vested right because, as the trial court found, APS did not act in good faith in applying for the permit or relying on it. (*Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546] [property owner acquires vested right to complete construction if he has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government].) Moreover, the court exercised its independent judgment and weighed the evidence in ruling that APS did not act in good faith, and therefore had no vested right to the permit.[3] Having first determined no vested right existed, the court then properly applied the substantial evidence test to determine whether the City's decision to revoke the permit was proper.

---

[3] APS incorrectly states in its opening brief that "[t]he trial court held that substantial evidence in the record showed that [APS] hid its true intended use of the property from the City." On the contrary, neither the trial court's minute order nor the transcript of the trial court hearing suggests that the court merely relied on "substantial evidence" and did not exercise its independent judgment on the question whether APS hid its intended use from the City. The court expressly addressed the evidence of bad faith, found no vested right to the permit, and stated that because APS had no vested right to the permit, it would apply the substantial evidence test to the administrative decision to revoke the permit. The court's two-step analysis was entirely proper. (See *Malibu Mountains, supra,* 67 Cal.App.4th at p. 370 [fundamental vested right was in force when plaintiff purchased the property, so judicial review of the revocation of that right should have been made under the independent judgment test].)

Our review of the administrative record confirms that substantial evidence supports the trial court's decision on both points.[4]

First, APS's contention that the weight of the evidence was "clearly in favor of [APS's] disclosure and good faith" is erroneous, as is the contention that the trial court failed to weigh the evidence on this point. APS's evidence consisted of Herrera's assertion that, before he bought the property, he met with appropriate permitting officials at Building and Safety, provided them written materials which fully described his business and the site's intended use as a medical autopsy laboratory, was informed that his proposed medical laboratory use was allowed by right and, as a result, purchased the property in good faith based on that information. APS asserts there "is no countervailing evidence in the record at all." That assertion is incorrect. Building and Safety staff were questioned and stated they had no knowledge, before the issuance of the permit, that the structure was intended for use as an autopsy facility. The plans approved by Building and Safety made no reference to an autopsy facility. The building permit application did not reveal APS's name as owner or tenant, instead naming Herrera as the owner.[5] The application for testing of the autopsy table—the only permit-related document that used the word "autopsy"—was filed in the name of "Otreum 'Le Labatory" and product approvals were issued without reference to the location where the product would be installed.[6]

Moreover, the trial court clearly weighed the evidence. At the hearing, the court listened to APS counsel's summation of the evidence of Herrera's claim that he explained his business to Building and Safety before purchasing the property, and expressed skepticism about Herrera's reliance on statements made by officials whom he could not identify. The court then stated: "I think

---

[4] "Regardless of the standard of review that was required of the trial court, our review on appeal is guided by the substantial evidence test." (*Malibu Mountains, supra*, 67 Cal.App.4th at p. 368.)

[5] At oral argument, counsel asserted that the permit application form required the use of code numbers for particular uses (code 13 for a medical laboratory) and, since no code was provided for "autopsy," APS had no opportunity to reveal the autopsy use on the permit application. Item 8 of the form, however, calls for a narrative description of the permitted work, and the conversion of the property to an autopsy facility (rather than conversion to a medical laboratory) could have been stated easily and naturally in that item.

[6] Herrera maintains that when he spoke to Building and Safety personnel before APS purchased the property, he showed them written materials describing his business. Even those materials, however, do not definitively show that APS intended to perform autopsies at the proposed facility. Herrera's list of services was lengthy and included, along with autopsies, such items as "[t]oxicology & serology analysis," "[p]ost-mortem HIV & AIDS diagnosis," and "[p]ost-mortem DNA (Paternity) analysis." Moreover, the materials stated the business was "mobile-based to provide appropriate procurement and transport/delivery services for tissue and organ case/specimens," and Herrera's services were carried out "in hospitals and funeral homes in an ancillary capacity, not in peoples homes, or in my vehicle . . . ."

I agree with you, Mr. Gaines [counsel for APS], that if they issued the permit—that if the City of Los Angeles issued the building permit, knowing that your client was in the autopsy business, you've got a vested right, and they can't take it away from you. [¶] But I don't think that the people in the City of Los Angeles that issued the permit knew that, nor do I think from the papers that were given to the City at the time the permit was applied for there was any way they could know that." Similarly, the court's minute order states: "The [vested rights] rule [is] inapplicable to the facts of this case because [APS] did not act in good faith in applying for or relying upon the permit issued by [the City]. [APS] artfully concealed the true nature of its business by (1) not disclosing its name in its application for the permit, and (2) by describing its business in said application as a 'medical laboratory.' Under those circumstances the staff of the City Department of Building & Safety who approved the permit did not [citation], and could not reasonably be expected to, realize that the true nature of [APS's] business was to perform autopsies on cadavers in a C-2 zone."

In short, the trial court weighed the evidence concerning APS's good faith and found it wanting.[7] Because substantial evidence in the administrative record supports the court's conclusion, we are bound to affirm it.

Second, APS contends its project complied with the Specific Plan. According to APS, even if APS had no vested right to complete the project, the City should be ordered to set aside its decision denying Specific Plan approval and a Specific Plan exception, which was the basis for the permit revocation. In particular, APS argues that no Specific Plan exception was necessary, because the Specific Plan does not expressly prohibit autopsy use.[8] We disagree. APS erroneously contends no evidence justified the determination that the proposed autopsy facility was equivalent to use as a morgue or mortuary, a use

---

[7] On appeal, APS appears to suggest Herrera's evidence has more weight because it was reasserted many times in repeated letters and statements before the various bodies that reviewed the matter. Repetition of the same point does not add to the weight of the evidence. APS also appears to think it is significant that the City inspected and approved the construction eight times, but does not explain why that is "evidence . . . [APS] never hid, and could not have hidden, . . . the . . . proposed use."

[8] APS also argues a Specific Plan exception was not required because the proposed use did not violate the requirement that "at least 70 percent of the ground floor frontage shall contain at least one of the following: retail sales, personal services, restaurants, pedestrian parks, plazas, cultural, art, and/or historical museums, or other related uses as determined by the Director . . . through the Plan Approval process." APS claimed this requirement was met because it proposed "to display historic artifacts and community art in the windows on the first floor . . . ." While we doubt that a window display constitutes a "cultural, art, and/or historical museum" within the meaning of the "ground floor frontage" requirement, we need not consider the point, because we uphold the determination that autopsy use itself was prohibited.

restricted to industrial zones.[9] In concluding that substantial evidence supported the revocation of APS's permit the trial court stated: "[T]he premises have no refrigeration on site to keep cadavers and human tissue at a temperature of 39 degrees [F]ahrenheit or below, as required by the Los Angeles County Department of Health, and . . . the premises have no back entrance so that cadavers would have to be delivered and removed from the premises in view of pedestrians and passing automobiles. [Citation.] [¶] Petitioner's business therefore exposes the public to risks similar to those created by funeral parlors and morgues, which businesses are restricted to areas assigned an industrial land use designation and zoning [citation]."

APS ignores the evidence cited by the trial court. It asserts that an autopsy facility is a medical laboratory because research on the cause of death is conducted in the facility, whereas the "primary purpose of a morgue is to store bodies prior to burial or cremation." According to APS, because the facility will not store bodies, it cannot be placed in the same category as a morgue or mortuary. Again, we disagree. It is the mere presence, rather than the storage, of deceased bodies on the premises that informed the City's conclusion that the proposed use rendered it akin to morgues and mortuaries.[10] Contrary to APS's assertion, the City did not abuse its discretion in reaching that conclusion, and the trial court properly upheld the City's determination.

We note one final point. At oral argument, counsel for APS insisted that APS, at a minimum, had a vested right to use the property as a medical laboratory, *sans* autopsies, since Building and Safety issued the permit for that use. Counsel raised the same point at the hearing before the trial judge, who correctly observed that APS did not, at any stage of any administrative proceeding below, assert or suggest its willingness to use the property as a medical laboratory, rather than as an autopsy facility. Because none of the City entities which reviewed APS's Specific Plan application had any opportunity to consider the use APS now proposes, no basis exists for this court to opine on the point. We assume that, if APS applies for and receives Specific Plan approval for the change of use to a medical laboratory rather than an autopsy facility, Building and Safety will promptly reinstate or reissue the permit, since revocation of the permit was based solely on the lack of Specific Plan approval.

---

[9] The Planning Commission found the proposed autopsy facility was "equivalent to the following uses and their related activities . . ." and listed crematoriums, embalming, funeral parlors, mausoleums, morgues, mortuaries, and mortuary schools, all of which are restricted to industrial areas.

[10] Indeed, APS's own written materials on its business include, among its services, the notation "Off-site laboratory-morgue facility available."

## DISPOSITION

The judgment is affirmed. The City of Los Angeles is entitled to recover its costs on appeal.

Cooper, P. J., and Flier, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 24, 2005.