Filed 11/23/22  Citizens for Free Speech v. County of Alameda CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITIZENS FOR FREE SPEECH, LLC, et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF ALAMEDA,<br><br>    Defendant and Respondent. | A162283<br><br>(Alameda County<br>Super. Ct. No. HG19043853) |

In 2014, appellants Citizens for Free Speech, LLC (Citizens) and Michael Shaw (collectively referred to as "appellants") entered into an agreement allowing Citizens to install and maintain billboards and supporting structures on Shaw's land[1] in an unincorporated portion of respondent County of Alameda (the County).  It is not disputed that the billboards and supporting structures were installed and maintained in violation of the County's Code of General Ordinances, Title 17 ("the zoning ordinance").[2]  In 2019, the County passed a resolution that declared the

---

[1]    After the billboards were installed, Shaw sold the land to a third party, but retained an easement to maintain the billboards.  The new owner is not involved in this litigation.

[2]    All further unspecified sections are to the Alameda County Code of General Ordinances.

1

billboards and supporting structures to be a public nuisance in violation of the zoning ordinance and ordered their abatement by removal. Appellants sought to set aside the County's resolution by filing a petition for a writ of mandate and complaint seeking declaratory and injunctive relief. We now affirm the judgment denying the writ and dismissing the complaint.

FACTS

## I. Background

This appeal centers on appellants' installation and maintenance of billboards with supporting structures on land in an unincorporated portion of the County. During the course of the underlying litigation, the billboards included signs with messages of "noncommercial speech, political speech, and both onsite and offsite commercial speech."[3]

The challenged billboards and supporting structures are subject to the zoning ordinance, specifically: (1) section 17.18.010 (purpose of a planned development district)[4]; (2) section 17.18.120 (land use within the boundaries

---

[3] At the time the billboards were constructed, the land then owned by Shaw also contained a self-storage business with individual lockers to accommodate the storage of customers' property as well as open storage for customers' recreational vehicles. There was, and remains, a sign on the land displaying "onsite commercial speech" concerning the self-storage business. That sign is not at issue on this appeal.

[4] At all relevant times, section 17.18.010 read: "Planned development districts, hereinafter designated as PD districts, are established to encourage the arrangement of a compatible variety of uses on suitable lands in such a manner that the resulting development will: [¶] A. Be in accord with the policies of the General Plan of the county; [¶] B. Provide efficient use of the land that includes preservation of significant open areas and natural and topographic landscape features with minimum alteration of natural land forms; [¶] C. Provide an environment that will encourage the use of common open areas for neighborhood or community activities and other amenities; [¶]

2

of a planned development district (in this case the 1833rd Zoning Unit) to conform to the approved land use and development plan)[5]; (3) section 17.52.515, subdivision (A) (regulations of billboards in unincorporated areas of the County)[6]; and (4) Ordinance No. O-89-03 (adopted on January 5, 1989), further limiting the type of signage allowed to one non-electrical sign with maximum dimensions of two feet by twenty-four feet.  "Any property found . . . to be maintained in violation of Title 17 is . . . a public nuisance," and subject to abatement by "rehabilitation, removal, demolition, or repair." (§ 17.59.010.)

---

D. Be compatible with and enhance the development of the general area; [¶] E. Create an attractive, efficient and safe environment."

[5]     At all relevant times, section 17.18.120 read: "Any use of land within the boundaries of a planned development district adopted in accordance with the provisions of this chapter shall conform to the approved land use and development plan."

[6]     At the time of the 2014 installation of the billboards, section 17.52.515 read, in pertinent part, that "[n]otwithstanding any other provision in Title 17, no person shall install, move, alter, expand, modify, replace or otherwise maintain or operate any billboard or advertising sign in the unincorporated areas of Alameda County, except: [1.] Those billboards or advertising signs which legally exist as of the time this section is first adopted; [2.] Those billboards or advertising signs for which a valid permit has been issued and has not expired." (*Id*., Paragraph A.)  The "purpose and intent" of section 17.52.515 was: "[¶] 1. To protect and advance the county's interests in community aesthetics by the control of visual clutter, pedestrian and driver safety, and the protection of property values; [¶] 2. To implement the county's general plan by insuring that billboards and advertising signs within the county's unincorporated area are compatible with their surroundings and are in keeping with the goals and objectives of those plans; and [¶] 3. To maintain the attractiveness and orderliness of the county's unincorporated area's appearance." (§ 17.52.515, Paragraph B.)  In 2019, subsection B., paragraph 1, was amended to add that the purpose and intent of section 17.52.515 was to also protect and advance the County's interests in community aesthetics by the "protections of scenic corridors." (Ord. No. 2019-2, § 2, 1-15-19.)

## II. Appellants' First Federal Action

On June 1, 2014, appellants filed an action in the Northern District of California ("first federal action")[7] seeking (1) a declaration that the County's zoning ordinance violated appellants' federal and state constitutional rights, and (2) a permanent injunction to enjoin the enforcement of any zoning ordinance sections that allowed for the removal of the billboards and supporting structures as a public nuisance. One day later, on June 2, a county code enforcement investigator conducted a site visit.

On June 10, 2014, Shaw received a "**Declaration of Public Nuisance – Notice to Abate** dated June 2, informing him the land contained "**unlawful signs (billboards),**" in violation of zoning ordinance sections 17.18.010 and 17.18.120 and provisions of the county general plan ("not a permissible use under the Resource Management land use designation") and directing him to "**[r]emove the billboards, including the support/ mount, from the property**" (bolded language in original) (hereinafter "the 2014 Declaration of Public Nuisance").

In response to the 2014 Declaration of Public Nuisance, appellants filed a successful preliminary injunction motion, which temporarily stayed any administrative nuisance abatement proceeding pending resolution of the first federal action. (*Citizens for Free Speech, LLC v. County of Alameda* (N.D. Cal. 2014) 62 F.Supp.3d 1129, 1134.) However, following further proceedings, the federal district court found in favor of the County on all claims, except for one section of the zoning ordinance not at issue in this appeal.[8] (*Citizens for Free Speech, LLC v. County of Alameda* (N.D. Cal.

---

[7]    All further federal actions were filed in the Northern District of California.

[8]    The federal district court held that "section 17.52.520(A) (a provision that favored signs by public officials) violated the equal protection clause, as

2015) 114 F.Supp.3d 952, 967-973, *Citizens for Free Speech, LLC v. County of Alameda* (N.D. Cal. 2016) 194 F.Supp.3d 968, 971–972; see *Citizens for Free Speech, LLC v. County of Alameda*, *supra*, 2017 U.S. Dist. Lexis 33322.)

Pertinent to appellants' arguments on appeal, the federal district court explicitly found that: (1) sections 17.18.010 and 17.18.120 (which formed the basis of the 2014 Declaration of Public Nuisance) were constitutional as applied to appellants' billboards (*Citizens for Free Speech, LLC v. County of Alameda*, *supra*, 114 F.Supp.3d at pp. 958, 967-973); (2) section 17.52.515 (curtailing the proliferation of billboards in unincorporated areas) was a valid content-neutral regulation of time, place, or manner of speech, which passed intermediate scrutiny analysis under both the federal and state Constitutions (*Citizens for Free Speech, LLC v. County of Alameda*, *supra*, 114 F.Supp.3d at pp. 967–973); and (3) appellants were not entitled to a permanent injunction barring the County from enforcing its zoning ordinance (*Citizens for Free Speech, LLC v. County of Alameda*, *supra*, 2017 U.S. Dist. Lexis 33322, *supra*, at p.*12).

---

it was content-based and did not withstand [a] strict scrutiny [analysis]. . . . [After the federal district court's ruling,] the County amended section 17.52.520(A), removing the constitutionally flawed language," to the satisfaction of that court. (*Citizens for Free Speech, LLC v. County of Alameda* (N.D. Cal. 2017) 2017 U.S. Dist. Lexis 33322 at pp.*3, 20–21, 23 & fn. 14.) Because appellants' success in securing a change in the zoning ordinance was limited to section 17.52.520(A), and they had not otherwise "achieved a change in the law that justifie[d] the continued display of [the] billboards (*Citizens for Free Speech, LLC. v. County of Alameda*, *supra*, 2017 U.S. Dist. Lexis 33322 at p.*12), the federal district court awarded appellants $1 in nominal damages and attorney fees in a reduced amount. (*Id*. at pp.*8, 23-24.)

### III. The County's Nuisance Abatement Proceeding

Following the conclusion of the first federal action, on September 22 and September 27, 2017, two county code enforcement officers conducted another site visit.

Shaw was sent a "**Declaration of Public Nuisance – Notice to Abate**," dated September 28, 2017, informing him that the land contained "**[f]our unauthorized signs [hereinafter referred to as billboards], including support structures**" and " **[o]ne unauthorized digital billboard, including support structures**" (photographs attached), which violated zoning ordinance sections 17.18.20 and 17.52.515 and Ordinance No. O-89-03, and directed him to "**[r]emove the five signs identified above, including support structures**" (bolded language in original) (hereinafter "the 2017 Declaration of Public Nuisance"). If the billboards were not removed, the County would pursue an administrative nuisance abatement proceeding.

When appellants failed to remove the billboards, the County sent Shaw a Notice of Administrative Hearing on Abatement of Nuisance before the Board of Zoning Adjustments (BZA) to determine whether the billboards violated the zoning ordinance and should be declared a public nuisance and abated by removal.

### IV. Appellants' Second Federal Action

In response to the 2017 Declaration of Public Nuisance, appellants filed a second federal action in early February 2018.[9] Appellants contended the County was barred from pursuing an administrative nuisance abatement proceeding due to the resolution of the first federal action in appellants' favor.

---

[9] In this second lawsuit, appellants named as defendants the County, the BZA and named members of the BZA (sued in their official capacities).

6

According to appellants, if the County wanted to pursue an administrative nuisance abatement proceeding it should have filed a compulsory counterclaim for such relief under rule 13 of Federal Rules of Civil Procedure (28 U.S.C.) ("Rule 13").  In the alternative, appellants argued the first federal action barred any later administrative nuisance abatement proceeding under "long-recognized principles of res judicata."

On September 4, 2018, the federal district court dismissed the second federal action for lack of jurisdiction over appellants' federal constitutional claims, invoking the doctrine set forth in *Younger v. Harris* (1971) 401 U.S. 37 (*Younger*) that requires a federal court to abstain from considering federal claims that may interfere with ongoing state proceedings.  (*Citizens for Free Speech, LLC. v. County of Alameda* (N.D. Cal. 2018) 338 F.Supp.3d 995, 1002–1004.)  The federal district court also issued an alternate ruling finding that, even if *Younger* were inapplicable, dismissal would be required because the County was not barred from pursuing an administrative nuisance abatement proceeding under Rule 13 or the federal common law of res judicata or claim preclusion.  (*Id*. at pp. 1006–1008.)  The Ninth Circuit affirmed.  (*Citizens for Free Speech, LLC v. County of Alameda* (9th Cir. 2020) 953 F.3d 655, 656–658.)

## V.     Board of Zoning Adjustments (BZA) Hearing

Following resolution of the second federal action, the County rescheduled the BZA hearing concerning appellants' challenge to the 2017 Declaration of Public Nuisance.

On November 8, 2018, the BZA (comprised of two members) held a public hearing.  The hearing began with the County assistant planning director reciting portions of the written staff report prepared by members of the planning department.  The planning department staff concluded the

7

billboards and the supporting structures did not conform to the zoning ordinance, thereby rendering them a public nuisance and requiring abatement by removal. The BZA chairperson also noted that, "[p]rior to the meeting" being held that day, appellants had submitted a "binder" of documents that had been reviewed by both BZA members "for the first hour."

Public comment was made by Shaw, Jeffrey Herson (Citizens' representative), two attorneys jointly representing appellants, and the County's outside counsel. One of appellants' counsel specifically stated he was responsible for the late submission of appellants' binder of documents and asked the BZA to consider those documents in rendering its decision. Counsel explained that the documents were in support of appellants' position that removal of the billboards was barred as the federal district court had declared the zoning ordinance unconstitutional at the time of the installation of the billboards. In opposition, the County's outside counsel asserted that the federal litigation determined that the zoning ordinance *was* constitutional, save for one section not pertinent to appellants' billboards; therefore, the County could proceed with an administrative nuisance abatement proceeding to remove the billboards. The County's outside counsel also urged the BZA to uphold the 2017 Declaration of Public Nuisance as appellants had not disputed the existence of the billboards and that their maintenance violated the zoning ordinance.

After the public comment portion of the hearing, the BZA Chairman continued the hearing with a discussion between board members and county staff. A senior deputy county counsel stated that the only issue before the BZA was the validity of the 2017 Declaration of Public Nuisance, and not the validity of the federal district court's decisions. In clarifying her statement, counsel stated: "Can I clarify one item I said? I indicated what wasn't before

8

you was the lower court's decision. I'm not saying you can't consider and you should not consider all the information that was provided to you today. It's just merely you're not deciding on whether that decision should be turned around, the lower court's decision. But you certainly can consider all the materials that were submitted, and I will ask because there has been some reference to time. Have both of you for purposes of the record had ample time to review all the information that was provided to you today?" The BZA chairperson confirmed he had had enough time to review the information, but the other board member indicated he wanted more time, stating twenty minutes "is fine," and the meeting was adjourned for twenty minutes.

When the meeting reconvened, the BZA chairperson asked if there were any more questions for staff. There were no further questions and no board member asked for additional time to review appellants' written submission. The BZA members then voted and approved the staff recommendation, specifically declaring that Shaw's property was in violation of sections 17.18.120 and 17.52.515, and Ordinance Number O-89-03, thereby rendering the billboards and supporting structures to be a public nuisance, and the billboards and supporting structures were to be removed by a certain date.

On November 13, 2018, the BZA issued its written decision, declaring the billboards and supporting structures to be a public nuisance as they were being maintained in violation of the zoning ordinance, and ordering removal to abate the public nuisance. The BZA's order was based on a "Pre-Hearing Report," which identified "public nuisance conditions" and recommended the finding of "violation;" and the BZA's consideration of "all said reports, recommendations and testimony," noting that "the owner or representative did appear at said hearing to present testimony."

## VI. Board of Supervisors (BOS) Hearing

Following the BZA's issuance of its abatement order, appellants filed their appeal with the BOS.

Before the public hearing on the appeal, appellants' counsel sent a letter setting forth the reasons for the appeal. Appellants asserted, in pertinent part, that: (1) any removal order "was waived" by the County's failure to seek that relief in appellants' earlier federal litigation that resulted in a final judgment in appellants' favor; (2) during the BZA hearing county counsel informed the board members that they did not need to consider all evidence submitted at the hearing; (3) during the BZA hearing a named board member requested additional time to consider the matter, but county counsel insisted that a decision be rendered in 20 minutes; and (4) appellants objected generally that the procedures employed in this matter failed any measure of constitutionally required due process and unconstitutionally deprived appellants, and those on whose behalf they spoke, of their free speech rights under the United States Constitution and the California Constitution.

On February 5, 2019, the BOS held a public hearing on appellants' appeal of the BZA's abatement order. The proceeding began with the County assistant planning director reciting portions of the staff report prepared by the planning department and setting forth the recommendation that the appeal be denied and the BZA's abatement order be upheld. The staff report specifically stated that at the BZA hearing appellants did not dispute the existence of the billboards or that they violated the zoning ordinance. Instead, appellants contended only that the billboards were permitted based on the prior federal litigation. In their written appeal to the BOS, appellants again made no denial of the factual basis for the abatement order, but argued

only that the BZA's abatement order was not based on requirements in applicable statutes or the zoning ordinance.

The County assistant planning director also informed the BOS of the status of the billboards and supporting structures. At the time of the BOS hearing, "there are two support structures that used to hold two billboards each, and there's a third support structure that currently holds an intact and functioning digital display billboard. The four billboards previously have been removed. It's just the support structures that remain." The County assistant planning director also informed the BOS that appellants' prior federal court litigation had resulted in the rejection of their argument that the County could not proceed with an administrative nuisance abatement proceeding.

During the public comment portion of the hearing, the BOS heard first from Shaw, and then from Jeffrey Herson, Citizens' representative. During their statements addressing the merits of the appeal, appellants focused their arguments on the purported preclusive effect of the prior federal court litigation.

Appellants made no statements challenging the county staff's report that the billboards and supporting structures were in violation of the zoning ordinance, thereby rendering them a public nuisance, or challenging the county staff's recommendation that the public nuisance should be abated by removal of the billboards and supporting structures. The BOS voted and denied appellants' appeal.

The County later issued a written resolution, declaring the billboards and supporting structures to be a public nuisance and ordering abatement by removal. The resolution recited that appellants had appeared at the BOS hearing and presented testimony and argument in support of the appeal; the

current owners of record of the property had not appeared at the hearing or otherwise responded to the notice of the hearing; the BOS had considered a staff report and recommendations provided by county staff; and the BOS had considered "the appeal de novo." The resolution also specifically recited that the BOS had found the billboards and supporting structures to be a public nuisance in violation of sections 17.18.120, 17.52.515, the 1833rd Zoning Unit, and Ordinance O-89-03, and ordered abatement by removal of the billboards and supporting structures.

## VII. Appellants' Third Federal Action

Following the issuance of the County's resolution, appellants filed another federal action ("third federal action") on February 25, 2019 that alleged several causes of action. The first four substantive causes of action sought relief based on federal and state constitutional claims for violation of free speech and due process. Two state law substantive causes of action sought a writ of administrative mandamus and a writ of prohibition pursuant to California Code of Civil Procedure sections 1094.5 and 1103, respectively.

The federal district court (1) granted the County's motion to dismiss the federal causes of actions without leave to amend, and (2) declined to accept supplemental jurisdiction of any state law claims under 28 United States Code section 1367, subdivision (c). (*Citizens for Free Speech, LLC v. County of Alameda* [dec. Nov. 6, 2019; case 4:19-cv-01026-SBA][nonpub. opn.].) The Ninth Circuit affirmed. (*Citizens for Free Speech, LLC v. County of Alameda* (9th Cir. 2020) 830 F. Appx. 551.)

## VIII. Appellants' Current State Court Action

Following the dismissal of the third federal action, appellants commenced this state court action by filing their complaint for injunctive and declaratory relief and petition, seeking, among other things, a writ of

12

mandate directing the County to set aside its resolution declaring the billboards a public nuisance and requiring abatement by removal.

In resolving appellants' petition for a writ of mandate, the trial court considered the pleadings, the parties' written submissions, the administrative record, matters subject to judicial notice, and counsel's arguments made at a hearing on February 5, 2021. The court issued a written order on February 13, 2021, denying the petition for a writ of mandate. It later entered a judgment in favor of the County that incorporated the February 13 order and dismissed the related complaint.

This appeal ensued.[10]

## DISCUSSION

### I. Applicable Law and Standard of Review

We begin our discussion with a review of the applicable law and standard of review.

#### A. *Land Use Regulation*

" 'Land use regulation in California historically has been a function of local government under the grant of police power contained in article IX, section 7 of the California Constitution.' " (*Citizens for Free Speech, LLC v. County of Alameda*, *supra*, 338 F.Supp.3d at p. 1007, citing *Big Creek Lumber Co v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1151 & *Wilkins v. City of San Bernardino* (1946) 29 Cal.2d 332, 337 [noting a county's decision to enforce its ordinance is a matter within its discretion].) Hence, " ' "[i]t is well

---

[10] In their notice of appeal, appellants seek review of the February 26, 2021 judgment and the February 13, 2021 order denying their petition for a writ of mandate, which order was incorporated in the judgment. We dismiss the appeal from the February 13, 2021 order, which is not separately appealable, and review that order on appeal from the February 26, 2021 judgment. (See *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222 [" 'there can only be one "final judgment" in an action' "].)

settled that a municipality may divide land into districts and prescribe regulations governing the uses permitted therein, and that zoning ordinances, when reasonable in object and not arbitrary in operation, constitute a justifiable exercise of police power." ' " (*Hernandez v. City of Hanford* (2007) 41 Cal.4th 279, 296.)

"Consistent with [its police] power," the County has enacted a comprehensive zoning ordinance, "which confers the power" to declare a violation of the zoning ordinance a public nuisance and to provide for the abatement of the public nuisance "through an extra-judicial, administrative process." (*Citizens for Free Speech, LLC v. County of Alameda*, *supra*, 338 F.Supp.3d at p. 1007; see *Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 255 [violations of a planning code constitute a public nuisance].)

The County's regulation of billboards does not impermissibly impinge on a landowner's constitutional right to the use of the property. "There is no constitutional right to own property free from regulation. Neither the state nor the federal Constitution guarantees any person absolute liberty of action. [Citation.] 'We do not consider lightly the importance of the constitutional guarantee attaching to private ownership of real property. [¶] However, . . . it was clearly established that property ownership rights, reserved to the individual by constitutional provision, must be subordinated to the rights of society. It is now a fundamental axiom in the law that one may not do with his property as he pleases; his use is subject to reasonable restraints to avoid societal detriment. . . .' " (*Whaler's Village Club v. California Coastal Com.* (1985) 173 Cal.App.3d 240, 253; see *E. W. A. P., Inc. v. City of Los Angeles* (1997) 56 Cal.App.4th 310, 325 ["[a]dministrative decisions which result in restricting a property owner's return on his property, increasing the cost of

14

doing business, or reducing profits are considered impacts on economic interests, rather than on fundamental vested rights"].)

Also, the County's regulation of billboards does not impermissibly impinge on a landowner's constitutional right to free speech. It is settled that "[b]illboards are a well-established medium of communication use to convey a broad range of different kinds of messages," "[b]ut whatever its communicative function, the billboard remains a 'large, immobile, and permanent structure which like other structures is subject to . . . regulation.' [Citation.] Moreover, because it is designed to stand out and apart from its surroundings, the billboard creates a unique set of problems for land-use planning and development." (*Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490, 501–502 (plurality opinion).)

As the federal district court has already ruled, Alameda County's zoning ordinance section 17.52.515, "curtailing" the proliferation of billboards in unincorporated areas of Alameda County, is a valid " 'content-neutral regulation of the time, place, or manner of speech,' " which passes " 'intermediate scrutiny' " under both the federal and California Constitutions. (*Citizens v. Free Speech, LLC v. County of Alameda*, *supra*, 114 F.Supp.3d 952, 967-973; see *City of Austin v. Reagan National Advertising of Austin, LLC* (2022) __ U.S. __, 142 S. Ct. 1464, 1472-1473 (majority opinion) [*Reed v. Town of Gilbert* (2015) 576 U.S. 155 did not require application of strict scrutiny to zoning ordinance that did not single out any topic or subject matter on a billboard for differential treatment and where the billboard sign's substantive message itself was irrelevant to application of the zoning ordinance].)

15

### B. The County's Nuisance Abatement Procedures

Under the County's administrative nuisance abatement procedures, a property in violation of the zoning ordinance may be declared a public nuisance, resulting in the issuance of a notice to abate. (§§ 17.59.010, 17.59.030.) While a property found to be a public nuisance is subject to abatement by "rehabilitation, removal, demolition, or repair" (§ 17.59.010), "[n]o property shall be found to be a public nuisance under [s]ection 17.59.010 and ordered demolished unless there is no reasonable way other than demolition and removal to correct such nuisance, as determined by the county" (§ 17.59.150).

If the property owner fails, neglects, or refuses to comply with a notice to abate, an administrative hearing will be conducted before the BZA. (§§ 17.59.040–17.59.060.) "At the time stated in the notice, the [BZA] shall hear and consider all relevant evidence, objections or protests, and shall receive testimony relative to such alleged public nuisance and to proposed rehabilitation, repair, removal or demolition of such property. [11] Said hearing may be continued from time to time. [¶] If the [BZA] finds that such public nuisance does exist and that there is sufficient cause to rehabilitate,

---

[11] The zoning ordinance also includes general procedural rules governing the BZA and BOS hearings. Section 17.50.130 specifically provides that the hearings "need not be conducted according to the California Code of Evidence;" "[h]earsay evidence may be used for the purpose of supplementing or explaining any direct evidence, but shall not be sufficient in itself to support [a] finding unless it would be admissible over objection in civil actions in courts of competent jurisdiction in this state;" "[a]ny relevant evidence shall be admitted if it is the type of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions in courts of competent jurisdiction in the state;" and "[i]rrelevant and unduly repetitious evidence shall be excluded."

demolish, remove or repair the nuisance, the enforcement officer shall prepare findings and an order for the [BZA's] adoption, which shall specify the nature of the nuisance, the method[(s)] of abatement and the time within which the work shall be commenced and completed which shall not exceed sixty (60) calendar days." (§ 17.59.060.)

A property owner dissatisfied with the BZA's decision may file an appeal to be heard before the BOS. (§ 17.59.090.) The appeal must include a statement of the grounds of the appeal, "together with all material facts and support thereof." (§17.59.090 (D).) Upon the conclusion of the hearing, the BOS shall determine whether the property or any part thereof as maintained constitutes a public nuisance; if so, the BOS shall adopt a resolution declaring such property to be a public nuisance setting forth its findings and ordering the abatement by having such property rehabilitated, repaired, or demolished and removed in the manner and means specifically set forth in the resolution. (§ 17.59.100.)

A ruling by the BOS is deemed final (§ 17.59.100) and may be appealed by way of a judicial action (§ 17.59.120). Administrative decisions are subject to judicial review by a petition for a writ of mandate. (Code Civ. Proc., § 1094.5; see *Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 282–284 (*Mohilef*) [reviewing administrative nuisance abatement proceeding through a mandate proceeding].)

### C.    *Judicial Review of the County's Resolution*

When evaluating an administrative nuisance abatement proceeding through a mandamus proceeding, "[a] trial court may issue a writ of administrative mandate where an agency has (1) acted in excess of its jurisdiction, (2) deprived the petitioner of a fair hearing, or (3) committed a prejudicial abuse of discretion. (Code Civ. Proc., § 1094.5, subd. (b).) .'Abuse

17

of discretion is established if the [agency] has not proceeded in a manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' (*Ibid*.)" (*Mohilef, supra,* 51 Cal.App.4th at p. 305.) "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).)

Additionally, Code of Civil Procedure section 1094.5, subdivision (e), provides: "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not be produced or that was improperly excluded at the hearing before respondent, it may enter a judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

The standard of review in both the trial court and appellate court is well settled. "[I]f the administrative decision does not substantially affect a fundamental vested right, the trial court considers only whether the agency's findings are supported by substantial evidence in light of the whole record. [Citation.] On appeal, we review the administrative decision itself (not the decision of the trial court) to determine if it is supported by substantial evidence." (*Mohilef, supra*, 51 Cal.App.4th at pp. 305–306; see *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. 10.) "If an administrative decision

18

substantially affects a fundamental vested right, the trial court must exercise its independent judgment in evaluating the evidence and must issue a writ of mandate if the agency's findings are not supported by the weight of the evidence." (*Mohilef*, *supra*, at p. 305.) We review such a trial court's determination under the substantial evidence test. (*Ibid.*)

## II. Analysis

### A. *No Reversal is Warranted Based on the Standard of Review Applied by the Trial Court*

We quickly dispose of the parties' extensive arguments regarding the standard of review that was – and should have been – applied by the trial court in evaluating the County's resolution as the trial court explicitly reviewed and relied on the undisputed facts before it in rendering its decision.

In their trial court briefs, the parties asked that court to apply the substantial evidence standard of review in evaluating the validity of the County's resolution. The court agreed with the parties, concluding as follows:

> "There was more than ample evidence in the record to support the County's decision. The administrative decision-makers had to resolve a single factual question: whether signs existed on the property in violation of the County's sign regulations The administrative record includes (1) testimony from County staff stating that there is a 'digital display billboard' on the Property; (2) a written staff report recounting a site inspection that confirmed the presence of multiple signs; (3) pictures of the signs; and (4) a map of the signs' locations on the Property. This record firmly establishes the existence of signs in violation of County Code sections 17.18.120, 17.52.515, and Ordinance O-89-03. [¶] In any event, Petitioners do not dispute that the signs exist – which is, in fact, a predicate of this lawsuit – *or* that they violate the County's sign regulations. Petitioners conceded at the hearing on the writ that 'the only pertinent facts' in the administrative proceedings were 'not in dispute,' stating '[t]he facts are the signs are present and the ordinance that the County relies on to take the signs

19

down indicates that the signs are illegal.' There is nothing more for the Court to resolve. Undisputed evidence substantially supports the County's decision."

In a footnote, the trial court acknowledged that appellants "obliquely suggested for the first time in their reply brief that they had a fundamental vested right to free speech," thereby implicitly asking the court to independently review the County's resolution. While the court found the issue was not properly before it, it ruled that "because the relevant facts are undisputed," it would have reached "the same result even if the applicable test under Code of Civil Procedure section 1094.5 were whether the weight of the evidence" supports the County's resolution.

Hence, and simply put, the record shows the trial court was not concerned with the credibility of witnesses or the weight of evidence as it properly focused on the undisputed evidence – the existence of the billboards on the property and their noncompliance with the zoning ordinance. And no other evidence was necessary to support the County's resolution that the billboards were a public nuisance requiring abatement by removal. Therefore, we find no merit to appellants' arguments for reversal as this is *not* a case in which the trial court was required to examine and weigh appellants' evidence or exercise its independent judgment as to the credibility of witness and the overall weight of the evidence. (*Malibu Mountains Recreation, Inc. v. County of Los Angeles* (1998) 67 Cal.App.4th 359, 370 (*Malibu Mountains Recreation*).)

Further, we will only reverse a judgment if an error "at the trial court level resulted in a miscarriage of justice to the extent that a different result would have been probable without the error." (*Malibu Mountains Recreation*, *supra*, 67 Cal.App.4th at p. 372; see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; Evid. Code, §§ 353, 354.) Here, "[t]he [trial] court's analysis of the

20

entire record on the basic issues that determine the outcome of this case leads to the unequivocal conclusion that no different result would ensue if this matter were to be remanded for review under the independent judgment test." (*Malibu Mountains Recreation, supra*, at p. 372.) The trial court made clear that under *either* standard of review (substantial evidence or independent judgment) the County's resolution was sustainable given it was "undisputed" that the billboards violated the zoning ordinance, rendering them a public nuisance subject to abatement by removal. Accordingly, we see no reason to reverse and remand to require the trial court to repeat the decision it has already made.[12]

### B.     Appellants Have Not Shown a Violation of Their Due Process Right to Fair Hearings

Appellants argue the County's resolution should be set aside because their due process right to fair hearings was violated by the way the County conducted the BZA and BOS hearings. According to appellants, they had no "meaningful opportunity" to present their case and hence, there can be no substantial evidence to support the County's resolution. We find appellants' argument unavailing.

---

[12]     The cases cited by appellants do not support a different outcome. The two published cases cited merely discuss general principles governing an appellate court's review of a trial court's factual findings (*In re Zeth S.* (2003) 31 Cal.4th 396, 405; *Guymon v. Board of Accountancy* (1976) 55 Cal.App.3d 1010, 1016), and the unpublished case (*Dredd v. Los Angeles County Civ. Serv. Comm.* (Aug. 13, 2018, B279819) [nonpub. opn.]), cannot be cited to us or relied upon by us (Cal. Rules of Court, rule 8.1115(a) & (b)). Indeed, we find it particularly troubling that while the County correctly notes in its responsive brief that *Dredd* is not citable, appellants nonetheless repeat the citation in their reply brief without explanation.

### 1. Applicable Law and Standard of Review

It is not disputed that the County's nuisance abatement proceeding implicates a protected property interest subject to due process protection even though the billboards were erected in violation of the zoning ordinance. (*Traverso v. People ex. rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1161.) Under these circumstances, it is well settled that while the County has the authority, "under [its] . . . legitimate police power, to remove and destroy any billboard found to be in violation" of its zoning ordinance, "notice and the opportunity to be heard must be provided" to the owner before it may act "to abate a billboard maintained in violation" of its zoning ordinance. (*Id.* at pp. 1161–1162; see *Mohilef, supra*, 51 Cal.App.4th at p. 286 [due process principles applicable to the City's administrative nuisance abatement proceeding required "reasonable notice and opportunity to be heard"].)

There is no required manner of hearing that must be afforded a landowner at an administrative nuisance abatement proceeding to satisfy due process. Generally, " 'the courts have recognized that boards of [zoning adjustments and zoning appeals] are not composed of legal experts, and often are not guided by such experts. Accordingly, board hearings have been measured by less exacting standards than are applied to judicial tribunals. The courts have indorsed, or at least they have not disapproved, a degree of informality which is uncommon even to hearings conducted by administrative agencies . . . . [¶] In general, judicial attention is focused upon the question whether the hearing was basically fair. If the board . . . in its conduct of the hearing allowed all persons who desired to speak an opportunity to do so, and afforded each side a fair chance to articulate his point of view, reversal for failure to hold a fair hearing is unlikely.' " (*Mohilef, supra*, 51 Cal.App.4th at pp. 295–296.)

It has therefore been held that due process at an administrative nuisance abatement proceeding does not necessarily require (1) a formal hearing, with rights of confrontation and cross-examination of witnesses; (2) sworn testimony or documents made under penalty of perjury; or (3) strict compliance with rules of procedure and evidence necessary in a judicial proceeding. (See *Mohilef*, *supra*, 51 Cal.App.4th at pp. 286, 289, 292, 298–299; see, e.g., *E. W. A. P., Inc. v. City of Los Angeles*, *supra*, 56 Cal.App.4th at pp. 315–316m 324 [at an administrative nuisance abatement proceeding, appellant was not denied a fair hearing by "virtue of the lack of sworn testimony, the lack of cross-examination, or the quality of the evidence"]; *Carmel Valley View, Ltd. v. Board of Supervisors* (1976) 58 Cal.App.3d 817, 823 ["a presentation to an administrative agency may properly include evidence that would not be admissible in a court of law"].)

We review de novo appellants' arguments that they did not receive fair hearings before the BZA and BOS. (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169–1170 [standard of review].)

### 2. Analysis

Appellants do not dispute they received notice of the zoning ordinance violations and had the opportunity for hearings before the BZA and BOS. In their complaint and petition, appellants confirm they "appeared" and "submitted evidence and testimony" at the BZA hearing, and that the BOS held a hearing on their appeal. They contend, however, that their due process rights were prejudicially violated by the manner in which the County conducted the hearings. We disagree, and now review their various contentions.

Regarding the BZA hearing, appellants complain that "the County presented no witnesses," and relied solely on "its own staff report;" appellants

23

"presented a binder full of evidence and documents for consideration, which the BZA flatly refused to consider;" and appellants were "only allowed . . . public comment time, and nothing more."

However, a review of the BZA hearing transcript reflects that appellants and their counsel were given the opportunity to present their arguments without any time limitation and the BZA members reviewed appellants' binder of documents. At no time did appellants or their counsel state that they needed more time to present arguments or evidence. Nor did appellants or their counsel make any objection on the bases that the staff report was insufficient to support the 2017 Declaration of Public Nuisance; that the county staff report was not authenticated, not based on personal knowledge, and not made under penalty of perjury; or that the County had not produced either the authors of the county staff report or other witnesses to provide testimony and submit to cross-examination. While appellants received the county staff report on the day of the hearing, we see nothing in the record that precluded them from asking for a recess or continuance of the hearing to review the county staff report or call as witnesses county staff who prepared the staff report. (§ 17.59.060 [the BZA hearing "may be continued from time to time"].) Accordingly, we find appellants' complaints about the BZA hearing are either not preserved for review or not supported by the record.

Appellants also argue that they were not afforded due process at both the BZA and BOS hearings based on an evaluation of factors enunciated in *People v. Ramirez* (1979) 25 Cal.3d 260 (*Ramirez*).) In *Ramirez*, our Supreme Court explained that "[the] identification of the dictates of due process generally requires consideration of (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such

24

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." (*Id.* at p. 269.) Having independently reviewed those factors, we see no merit to appellants' claim of a due process violation for the reasons stated by the trial court as follows:

> ". . . [T]he sole issue relevant to the County's abatement order was whether [appellants' billboards] violated the County's ordinances. That fact is undisputed. When the Court questioned [appellants] at oral argument about what additional evidence they would have presented, if given the opportunity, they could not identify any and agreed that their [billboards] were unlawful. The probable value of additional or substitute procedural safeguards is therefore zero. This factor weighs overwhelmingly in favor of the County.

> "The remaining *Ramirez* factors do not alter the balance. Neither party disputes that [appellants] have a property interest in the [billboards] that requires some procedural safeguards before the County could have issued the abatement order. But the County afforded [appellants] two opportunities before the BZA and the BOS to present and make their case. The Court also recognizes the County's important interest in using informal procedures for these types of [proceedings]. (*Mohilef, supra*, 51 Cal.App.4th at p. 294.) In light of the undisputed evidence that the [billboards] were unlawful, [appellants'] interest was adequately protected. The burden on the County of using more formal procedures also far outweighs the value of any additional process."

Regarding the BOS hearing, appellants complain that they were not allowed "to present any evidence, testimony, or substantive arguments," and

25

were given "a total of two minutes" of public comment time and then cut off. Again, a review of the BOS hearing transcript reflects that both Shaw and Citizens' representative were given an opportunity to present substantive arguments in support of the appeal of the BZA's abatement order. While appellants contend that a supervisor impermissibly cut short Shaw's planned presentation, appellants made no showing either in the trial court, or now on appeal, that the supervisor's conduct resulted in relevant evidence being "improperly excluded at the hearing," requiring a new hearing as allowed under subdivision (e) of section 1094.5 of the Code of Civil Procedure. Accordingly, we find appellants' complaints about the BOS hearing to be unavailing.

Appellants further contend that their due process right to a fair hearing on their appeal before the BOS "went to zero" after Shaw expressed his intent to put up political messages on the billboard signs concerning the ABAG [Association of Bay Area Governments], an organization opposed by Shaw. In response, a supervisor, who was also a county representative member of the ABAG, took Shaw's comment as a threat that Shaw was going to put up signs against the supervisor. According to appellants, as a result of the exchange between Shaw and the supervisor, the supervisor "prematurely" ended appellants' presentation of evidence because the supervisor felt "personally threatened" by appellants' "freedom of expression through their billboards."

Appellants also contend the supervisor "expressed his inability to be impartial and then attempted to maintain his right to vote on the [appeal] by stating, 'No, I feel like I can be impartial.' " For the reasons we now explain, we find appellants' arguments unavailing.

As a preliminary matter, appellants have forfeited any claim of the supervisor's lack of impartiality as the record does not reflect appellants requested that the supervisor not participate in the decision on the appeal after the supervisor stated he felt personally threatened by Shaw's comments. (See *Hayward v. Superior Court* (2016) 2 Cal.App.5th 10, 49 ["parties can waive disqualification of [decision-maker] by their conduct where they are aware of grounds for disqualification but continue to participate in the proceedings without raising the objection"].)

In their reply brief, appellants argue that forfeiture should not apply because they did not have an opportunity to present their claim of the supervisor's lack of impartiality during the BOS hearing. We disagree. The record reflects that after the described exchange between Shaw and the supervisor, Shaw was allowed to continue to address the BOS but he made no request that the supervisor not participate in the decision on the appeal based on the supervisor's remarks. Similarly, although Citizens' representative (who spoke after Shaw) had the opportunity to do so, he also made no request that the supervisor not participate in the decision on the appeal based on the supervisor's remarks.

The record also does not reflect that appellants' presentation of their appeal was impermissibly cut short by the supervisor. (See *Liteky v. United States* (1994) 510 U.S. 540, 556 ["[a] [decision-maker's] ordinary efforts at [hearing] administration – even a stern and short-tempered [decision-maker]'s ordinary efforts at [hearing] administration – remain immune" from a claim of bias].) As the County correctly asserts, the record reflects that before the supervisor made his challenged remarks, Shaw had been given time to make a substantive argument in support of the appeal (covering three pages of the hearing transcript), with the supervisor later noting that Shaw

27

had probably been given seven minutes even though there was a three-minute time frame for speakers.  Also, after Shaw's presentation, Citizens' representative was given time to present a substantive argument in support of the appeal, with no complaint that the time granted him was insufficient to complete his presentation.

We also see no merit to appellants' complaint that a new hearing before the BOS is required because the supervisor expressed his inability to be impartial.  As the County correctly asserts, the record reflects that after Citizens' representative completed his presentation, the supervisor immediately asked county counsel's advice concerning how the supervisor should respond to Shaw's comments about his intent to reestablish billboard signs concerning the ABAG.  When county counsel asked if the supervisor felt he could not be impartial in deciding the appeal, the supervisor confirmed that he felt he could be impartial but asked counsel for advice on the separate issue as to how to respond to Shaw's comments that the supervisor viewed as a threat to a vote in a public forum.  County counsel responded that the supervisor could vote on the appeal, and then address any response to Shaw's comments after the decision on the appeal.  Accordingly, we reject appellants' claim of error.

When viewed in the context of the entirety of the reported BOS hearing, we conclude the supervisor's challenged remarks do not reveal "such a high degree of . . . antagonism as to make fair judgment impossible" on the part of the supervisor.  (*Liteky v. United States*, *supra*, 510 U.S. at p. 555.)  The BOS was tasked with deciding whether the billboards and supporting structures were in violation of the zoning ordinance.  The only evidence relevant to that decision, as conceded by appellants, was the undisputed evidence of the existence of the billboards and supporting structures and that

28

their maintenance violated the zoning ordinance. Any evidence or comments concerning Shaw's proposed intent to reestablish the political content of the billboard signs was "irrelevant" evidence subject to exclusion. (§ 17.59.130 ["[i]rrelevant" evidence "shall be excluded" at the hearing before the BOS].) Given these circumstances, we see no reason to remand and reverse for a new BOS hearing based on the supervisor's challenged remarks.

In sum, the record demonstrates appellants' due process rights were satisfied as they had notice of the violations of the zoning ordinance that required removal of the billboards and a sufficient opportunity at each hearing (one before the BZA and one before the BOS) to respond, in writing and in person, as to why the billboards were not subject to removal as a public nuisance. Appellants have not shown how any additional process at the BZA or BOS hearings would have made any difference in the County's resolution. Nor do we see any reason to reverse and remand for a new hearing before the BOS based on Shaw's claim of purported bias of a supervisor.

## C. *No Reversal is Required Based on the County's Purported Failure to Comply with Sections 17.59.130 and 17.59.150*

Appellants contend that, separate from their due process argument, reversal and remand is required because the BZA and BOS hearings were not conducted in accordance with sections 17.59.130 ("Procedure-Hearing before board of zoning adjustments and Board of Supervisors" concerning the admission of evidence) and 17.59.150 ("Powers of abatement," providing that the County is to consider reasonable alternatives to removal or demolition of public nuisance). According to appellants, the County's failure to follow their

own statutory procedures renders the County's resolution "unauthorized and void per se."

However, appellants are generally limited to raising claims of error that were presented in the trial court. (See *Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [" '[g]enerally, issues raised for the first time on appeal which were not litigated in the trial court are waived' "].) Here, the record reflects that in their writ petition and supporting trial memoranda appellants did not seek to set aside the County's resolution on the basis that the County failed to comply with sections 17.59.130 and 17.59.150. Nor do appellants' citations to the administrative record demonstrate that the claim of error based on sections 17.59.130 and 17.59.150 was raised in the trial court.

Further, appellants' reply brief does not address the issue of forfeiture despite the County's argument that the claim of error based on sections 17.59.130 and 17.59.150 was not raised in the trial court. Even more significantly, appellants cite no decisional authority in support of their argument that the County's purported noncompliance with the cited sections renders the County's resolution "unauthorized and void per se." Accordingly, we do not further address this issue. (See *Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1399 ["[w]here a point lacks adequate . . . citation to authority, we may treat it as abandoned"].)

### D. The County's Administrative Nuisance Abatement Proceeding Was Not Barred by Rule 13, Code of Civil Procedure Section 426.30, or Federal or State Common Law Res Judicata or Claim Preclusion[13]

---

[13] At the hearing on the writ petition, appellants' counsel argued "the claim preclusion issue is not even ripe" for review and "res judicata" was not

30

We review de novo[14] and conclude that, despite appellants' arguments to the contrary, the County's administrative nuisance abatement proceeding was not barred by Rule 13[15], Code of Civil Procedure section 426.30,[16] or federal or state common law res judicata or claim preclusion.

"really pertinent" because the County had not yet filed a court action seeking to enforce its resolution ordering abatement of the public nuisance by removal of the billboards. However, we agree with the trial court that given the multiple judicial decisions on the issues – as well as the County's resolution, declaring the billboards a public nuisance, and expressly ordering their abatement by removal, the issue of the preclusive effect of the federal litigation on the County's ability to later pursue an administrative nuisance abatement proceeding was "framed with sufficient definiteness to enable [us] to make a decree finally disposing of the controversy." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.)

[14]    Because appellants' contentions present questions of federal and state law that we review de novo (See *Guerrero v. Department of Corrections and Rehabilitation* (2018) 28 Cal.App.5th 1091, 1100-1102 & *Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1218 [standard of review of federal and state law claims]), we do not separately address appellants' challenges to the trial court's rulings on the applicability of Rule 13 and federal common law res judicata or claim preclusion.

[15]    Rule 13 reads: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."

[16]    Our parallel provision to Rule 13 is set forth in Code of Civil Procedure section 426.30, which reads, in pertinent part: "(a) . . . [I]f a party against

31

We see no merit to appellants' contentions that the County's administrative nuisance abatement proceeding was barred by Rule 13 and federal common law res judicata or claim preclusion, which arguments were presented and addressed in the federal district court's decision dismissing the second federal action for failure to state a cause of action.[17]

In rejecting appellants' contention based on Rule 13, the federal district court persuasively stated, in pertinent part, as follows:

> "As an initial matter, . . . the County had no obligation to file a counterclaim in the [first federal action under Rule 13]. An ordinance is presumed constitutional, unless and until the plaintiff demonstrates otherwise. [Citation.] . . . [G]iven that [appellants] had affirmatively challenged the constitutionality of the Zoning Ordinance, it would have been superfluous for the County to file a counterclaim to establish the opposite – and by extension, its enforceability. [Citations.] . . . [¶] . . . [¶] [Appellants] also have failed to demonstrate that the Rule 13(a) bar, even if germane, applies to the circumstances presented. [Rule 13] applies where a party asserts a claim in a second federal court action that should have been asserted as a counterclaim in an earlier action. [Citation.] Here, the County is not asserting a second federal action against [appellants]. Rather, the County simply has resumed a local administrative enforcement proceeding pertaining to [appellants'

whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded."

17      The federal district court's rulings, which we find persuasive and dispositive, are not mere dictum. In dismissing the second federal action, the federal district court gave two independent reasons for dismissing the action, namely *Younger* abstention and failure to state a cause of action. (*Citizens for Free Speech, LLC v. County of Alameda, supra,* 338 F.Supp.3d at pp. 1002–1004, 1006–1008.) " '[W]here two independent reasons are given for a decision, neither one is to be considered mere *dictum,* since there is no more reason for calling one ground the real basis of the decision than the other. The ruling on both grounds is the judgment of the court and is of equal validity.' " (*Southern Cal. Chapter of Associated Builders etc. Com. v. California Apprenticeship Council* (1992) 4 Cal.4th 422, 431, fn. 3.)

billboards].  Such a proceeding is not an 'action.'  [Citations.]  Tellingly, [appellants] have not cited – nor has the Court been able to locate – any authority holding that the preclusive effective of Rule 13(a) extends to bar ongoing state administrative proceedings."  (*Citizens for Free Speech, LLC v. County of Alameda, supra,* 338 F.Supp.3d at pp. 1006–1008.)

In specifically rejecting appellants' argument based on federal common-law res judicata or claim preclusion, the federal district court persuasively stated, in pertinent part, as follows:

"Separate from Rule 13(a)," appellants argue that " '[t]he County's Abatement claim is barred by the doctrine of claim preclusion' on the ground that such claim[ ] 'could have been asserted in the [first federal action] in the form of counterclaim, but was not.'  [Citation.] 'Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action.'  [Citation.]  However, this doctrine is inapplicable, as the County is not seeking to relitigate any claims against [appellants] in this or any other court.  [Citation.] [¶] [Appellants] concede that there is no authority applying res judicata to bar a subsequent administrative proceeding.  Nonetheless, they point out that the opposite may be true; that is, an administrative action may in some circumstances preclude a subsequent lawsuit.  [Citation.] [Appellants] posit that since an administrative action litigated to finality can preclude a subsequent court action, 'it stands to reason that a court action can bar a subsequent administrative proceeding.' [Citation.]  The Court disagrees. [¶] Res judicata only bars a second action.  [Citation.]  As noted, the County's administrative abatement proceeding is not an 'action.'  [Citation.] . . . The Court finds no merit to [appellants'] claim that the doctrine of claim preclusion bars the County from enforcing the Zoning Ordinance against [appellants] with respect to the [billboards]."  (*Citizens for Free Speech, LLC v. County of Alameda, supra,* 338 F.Supp.3d at p. 1008.)

We likewise see no merit to appellants' argument that the County's administrative nuisance abatement proceeding was barred under Code of Civil Procedure section 426.30, which is our parallel provision to Rule 13. According to appellants, "[t]hough based on similar legal principles," a

finding that Rule 13 does not apply is not a finding that Code of Civil Procedure Section 426.30 is not applicable. However, like Rule 13, Code of Civil Procedure section 426.30 applies only to preclude a multiplicity of litigation between the parties. Here, the County has not asserted a state action against appellants. The County has only issued its resolution declaring the billboards a public nuisance and ordering their removal. Because the administrative proceeding is not an " 'action' " (*City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 48), Code of Civil Procedure section 426.30 is not implicated here. The cases cited by appellants do not support a different outcome.

We also find unavailing appellants' arguments that the County's administrative nuisance abatement proceeding was barred based on state common law principles of res judicata or claim preclusion. In California, " '[a]s generally understood, "[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." [Citation.] The doctrine "has a double aspect." [Citation.] "In its primary aspect," commonly known as claim preclusion, it "operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]" [Citation.] "In its secondary aspect," commonly known as collateral estoppel, "[t]he prior judgment . . . 'operates' " in "a second suit . . . based on a different cause of action . . . 'as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" [Citation.] "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the

merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.  [Citations.]" ' [Citation.]"  (*Boeken v. Phillip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*).)

"Here, we are concerned with the claim preclusion aspect of res judicata.  To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.'  [Citation.]  Under this theory, '[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests.  "Of these elements, the primary right and duty and delict or wrong combined constitute the cause of action in the legal sense of the term. . . ." ' [Citation.]"  (*Boeken, supra*, 48 Cal.4th at pp. 797–798.)

We find instructive the case of *Maldonado v. Harris* (9th Cir. 2004) 370 F.3d 945, 953 (*Maldonado*), decided under state common law res judicata or claim preclusion.  In *Maldonado*, the State of California sought to enforce its law governing a landowner's maintenance of billboards for advertising under a nuisance theory.  (370 F.3d at p. 949.)  In response, the landowner asserted several defenses, none of which concerned the constitutionality of the law. (*Ibid.*)  The state court enjoined the landowner from maintaining the billboards for advertising.  (*Ibid.*)  Thereafter, the landowner filed a federal lawsuit, alleging the California law prohibiting billboard advertising violated his First Amendment rights under the United States Constitution.  (*Ibid.*) The State sought to dismiss the federal action based on res judicata.  (*Ibid.*) The Ninth Circuit, applying California law's primary rights doctrine, allowed the landowner's federal action to proceed, finding that the landowner's federal claim was based on his primary First Amendment right to advertise

on his billboards, whereas "[t]he primary right in the state nuisance action was not [the owner's] right to advertise on his billboard, but the right of the people of California to be free from obtrusive advertising displays along major highways," which itself was based on a California statute. (*Id.* at p. 952.) Because the "primary rights involved in the two suits [were] different, the causes of action [were] also different" and res judicata was inapplicable to the owner's federal action. (*Ibid.*)

While *Maldonado* presents the converse of the situation before us (state action followed by a federal action), we find its analysis both persuasive and applicable to appellants' argument that the County was barred from pursuing an administrative nuisance abatement proceeding following appellants' first federal action. Appellants' first federal action was based on their primary right to maintain the billboards to display signs under their First Amendment right to free speech, whereas the primary right in the County's administrative nuisance abatement proceeding was the right of the people of the County to be free of billboards that constituted a public nuisance under the zoning ordinance. Because the primary rights involved in appellants' first federal action and the County's administrative nuisance abatement proceeding are different, the County is not barred from pursuing an administrative nuisance abatement proceeding by state common law res judicata or claim preclusion.

### E. No Reversal is Required Based on County's Purported Failure to Protect Appellants' First Amendment Rights

#### 1. Relevant Facts

In its written order denying the writ petition, the trial court rejected appellants' First Amendment arguments, as follows:

"[Appellants] asserted claims for violation of their free speech rights in their petition and opening brief. Before the County filed its opposition brief, the Ninth Circuit held that [appellants'] identical free speech claims asserted in [their third federal action] in federal district court were precluded by [their first federal action]. [(*Citizens for Free Speech, LLC v. County of Alameda, supra*, 830 Fed. Appx. at p. 552 ['[t]he nuisance abatement procedures are predicated on the same Zoning Ordinance provisions challenged in [the first federal action]. [Appellants'] claims therefore "were raised or could have been raised in the prior action" '].)]  [Appellants] did not address their First Amendment claims on reply and then expressly abandoned them at the hearing on the writ [petition]."

### 2.     Analysis

In challenging the trial court's ruling on its First Amendment arguments, appellants argue the court "failed to consider the very serious Constitutional protections that are owed to [appellants]." According to appellants, the County's administrative nuisance abatement procedures fail to provide necessary safeguards "to preserve free speech rights."

Preliminarily, we conclude this issue is not properly before us. As noted by the trial court and reflected in the record, appellants unambiguously abandoned any substantive First Amendment arguments at the hearing on their writ petition. In their appellate briefs appellants do not explain why we should now address this abandoned issue on the merits. (See *People v. Catlin* (2001) 26 Cal.4th 81, 168 ["the claim was abandoned at the trial level and is waived on appeal"]; *Johanson Transportation Service v. Rich Pik'd Rite Inc.* (1985) 164 Cal.App.3d 583, 588 ["issues raised and then abandoned in the trial court . . . cannot be considered on appeal"].)

In any event, we agree with the County that appellants' First Amendment arguments challenging the County's administrative nuisance abatement procedures are barred by the doctrine of res judicata (either claim or issue preclusion) as the arguments "were raised or could have been raised"

in appellants' first federal action as explained by the Ninth Circuit in its decision dismissing appellants' third federal action. (*Citizens for Free Speech, LLC v. County of Alameda, supra*, 830 Fed. Appx. at p. 552.)

## THE COUNTY'S MOTION FOR MONETARY SANCTIONS ON APPEAL

The County has filed a motion for sanctions against appellants for the filing of a frivolous appeal. Code of Civil Procedure section 907 provides that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Similarly, California Rules of Court, rule 8.276(a), provides that an appellate court has the authority to "impose sanctions . . . on a party or any attorney for: [¶] Taking a frivolous appeal or appealing solely to cause delay. . . . " The appeal before us comes perilously close to sanctionable conduct as almost all the arguments "are not supported by a careful reading of the record or the law nor could these arguments be reasonably characterized as presenting unique issues or arguing for extension, modification, or reversal of existing law." (*Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 557.)

By compelling us to examine those arguments for which there is no factual or relevant legal support, appellants have caused a "useless diversion of this court's attention" from "[o]ther appellate parties, many of whom wait years for a resolution of bona fide disputes." (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 17.) Nonetheless, our Supreme Court has informed us that we should hold that an appeal is "frivolous only when it is presented for an improper motive – to harass the respondent or delay the effect of an adverse judgment – or when it undisputedly has no merit – when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.] [¶] . . . [T]he punishment should be used most

38

sparingly to deter only the most egregious conduct." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650–651.)

Given these demanding requirements and the federal court's decision to dismiss appellants' state claims without prejudice to litigating the issues in state court, we cannot conclude the appeal is so totally and completely without all arguable merit as to justify an award of sanctions under the circumstances.

## DISPOSITION

The appeal from the February 13, 2021 order is dismissed. The February 26, 2021 judgment is affirmed. Respondent County of Alameda is awarded costs on appeal.

Respondent County of Alameda's motion for sanctions is denied.

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Fujisaki, J.

A162283/*Citizens for Free Speech LLC, et al., v. County of Alameda*